Filed:  July 3, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

———————

Nos. 96-1950(L)
(CA-90-3062-3-17)

———————

Alexander S., et al,

Plaintiffs - Appellees,

versus

Flora Brooks Boyd, etc.,

Defendant - Appellant.

———————

O R D E R

———————

The Court amends its opinion filed May 28, 1997, as follows:

On page 36, first full paragraph, line 3; and page 40, second full paragraph, line 4 -- the reference to part II.B.2. is corrected to read "III.B.2."

For the Court - By Direction

/s/ Patricia S. Connor
_____
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALEXANDER S.; ALFRED S.; BENNY
B.; CHRISTOPHER M.; LAFAYETTE M.;
RICKY S., by and through their
Guardian ad Litem; LESLY A.
BOWERS, Guardian ad Litem,
<u>Plaintiffs-Appellees,</u>

and

INEZ MOORE TENENBAUM,
individually and as a representative

of a class of juveniles,
<u>Plaintiff,</u>

v.

FLORA BROOKS BOYD, individually
and in her official capacity as
Director of the Department of
Juvenile Justice,
<u>Defendant-Appellant,</u>

and

No. 96-1950

RICHARD E. MCLAWHORN,
individually and in his official
capacity as former Commissioner of
the Department of Juvenile Justice
for the State of South Carolina;
JOHN F. HENRY; FRANK MAUDLIN;
KATHLEEN P. JENNINGS; JOSEPH W.
HUDGENS; KAROLE JENSEN; J. P.
NEAL, individually and in their
official capacities as former Board
Members for the South Carolina
Department of Juvenile Justice;
SOUTH CAROLINA DEPARTMENT OF
YOUTH SERVICES,
Defendants,

MICHAEL W. MOORE, Director of the
South Carolina Department of
Corrections,
Party in Interest,

v.

RICHARD A. HARPOOTLIAN, in his
official capacity as the Solicitor for
the Fifth Judicial Circuit,
Amicus Curiae-Movant.

THOMAS DAVIS,
Special Master,

ALEXANDER S.; ALFRED S.; BENNY
B.; CHRISTOPHER M.; LAFAYETTE M.;
RICKY S., by and through their
Guardian ad Litem; LESLY A.
BOWERS, Guardian ad Litem,
Plaintiffs-Appellees,

and

INEZ MOORE TENENBAUM,
individually and as a representative

of a class of juveniles,
Plaintiff,

v.

FLORA BROOKS BOYD,
Defendant-Appellant,

RICHARD A. HARPOOTLIAN, in his
official capacity as the Solicitor for
the Fifth Judicial Circuit,
Movant,

and

No. 96-2589

3

RICHARD E. MCLAWHORN,
individually and in his official
capacity as former Commissioner of
the Department of Juvenile Justice
for the State of South Carolina;
JOHN F. HENRY; FRANK MAUDLIN;
KATHLEEN P. JENNINGS; JOSEPH W.
HUDGENS; KAROLE JENSEN; J. P.
NEAL, individually and in their
official capacities as former Board
Members for the South Carolina
Department of Juvenile Justice;
SOUTH CAROLINA DEPARTMENT OF
YOUTH SERVICES,
Defendants,

MICHAEL W. MOORE, Director of the
South Carolina Department of
Corrections,
Party in Interest.

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge.
(CA-90-3062-3-17)

Argued: December 5, 1996

Decided: May 28, 1997

Before MURNAGHAN, WILLIAMS, and MOTZ Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opin-
ion. Judge Williams wrote the opinion. Judge Motz wrote a separate
opinion in which she concurred in Parts I., II., III.A. and C., IV., and
in the judgment. Judge Murnaghan wrote a dissenting opinion.

4

**COUNSEL**

**ARGUED:** Edward Mobley Woodward, Jr., WOODWARD, COTH-
RAN & HERNDON, Columbia, South Carolina, for Appellant. W.
Gaston Fairey, FAIREY, PARISE & MILLS, P.A., Columbia, South
Carolina, for Appellees. **ON BRIEF:** Carolyn C. Matthews, WOOD-
WARD, COTHRAN & HERNDON, Columbia, South Carolina, for
Appellant. Rochelle Romosca McKim, FAIREY, PARISE & MILLS,
P.A., Columbia, South Carolina; Nancy C. McCormick, PROTEC-
TION AND ADVOCACY FOR PEOPLE WITH DISABILITIES,
INC., Columbia, South Carolina; Lesly A. Bowers, Columbia, South
Carolina, for Appellees.

_____

**OPINION**

WILLIAMS, Circuit Judge:

In this appeal we must decide whether the recently enacted limita-
tions on attorney's fee awards set forth in § 803(d) of the Prison Liti-
gation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat.
1321 (1996) (codified at 42 U.S.C.A. § 1997e (West Supp. 1997)),
apply to attorney's fees awarded to Plaintiffs, a group of incarcerated
juveniles who have successfully challenged the constitutionality of
juvenile prison conditions in the state of South Carolina. Section
803(d) provides that no attorney's fees shall be awarded to a "prisoner
who is confined to any jail, prison, or other correctional facility" in
an action seeking redress for unconstitutional prison conditions
unless:

> (A) the fee was directly and reasonably incurred in
> proving an actual violation of the plaintiff's right protected
> by a statute pursuant to which a fee may be awarded under
> section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to
> the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in
> enforcing the relief ordered for the violation.

5

§ 803(d)(1) (codified at 42 U.S.C.A. § 1997e(d)(1)). In addition, any award made pursuant to § 803(d) is limited to an hourly rate no greater than 150 percent of the hourly rate established for payment of court-appointed counsel.[1] See § 803(d) (codified at 42 U.S.C.A. § 1997e(d)(3)).

In successive orders, which were consolidated for this appeal,[2] the district court held that the PLRA, enacted on April 26, 1996, did not apply to fee awards for work performed, but not compensated, prior to its enactment. As to fees for work performed subsequent to the PLRA's enactment, the district court held that the PLRA did not limit the fees generated in proving unconstitutional conditions at juvenile detention facilities, as opposed to adult facilities, because juvenile facilities were not covered by § 803(d) of the PLRA. For the reasons set forth herein, we disagree and hold that the attorney's fees limitations set forth in § 803(d) of the PLRA apply to juveniles confined to juvenile detention facilities. Moreover, the provisions apply to all awards of attorney's fee made after April 26, 1996, regardless of when the work was performed, if the plaintiff meets the new standards imposed by the PLRA for determining the appropriateness of an award of attorney's fees in a prison conditions lawsuit. Accordingly, the PLRA limits the fees available to Plaintiffs for proving unconstitutional conditions of confinement in juvenile facilities and

---

[1] Plaintiffs do not dispute the State's computation that the maximum rate is $112.50 per hour under 42 U.S.C.A. § 1997e(d)(3) (West Supp. 1997). However, the State does not concede that Plaintiffs' counsel's hourly rate should automatically be set at the maximum rate for all attorneys involved. The district court, finding that the attorney's fees limitations of the PLRA were inapplicable to this case, awarded Plaintiffs' lead counsel $225.00 per hour and associate counsel $100.00 per hour. Paralegal services were compensated at an hourly rate of $65.00.

[2] We consolidated the State's appeal of the February 16, 1996, May 29, 1996, and August 30, 1996 orders (No. 96-1950) with its later appeal of the October 2, 1996 order (No. 96-2589). The February order does not award fees. The State's appeal of that order is limited to the district court's conclusion that Plaintiffs achieved "prevailing party" status and therefore were eligible for fees related to a December 1995 hearing. The State challenges the amount of fees awarded in the May, August, and October orders for work related to the December 1995 hearing and subsequent monitoring services.

6

for monitoring services ordered by the district court. Because the awards entered by the district court were determined under the pre-PLRA standards, we reverse and remand to the district court for a redetermination under the new standards.

I.

This appeal arises out of ongoing litigation between a group of incarcerated juveniles confined to four South Carolina juvenile detention facilities and the South Carolina Department of Juvenile Justice (the State). First, we review the procedural background of this case.

A.

In 1990, Plaintiffs filed the underlying class action pursuant to 42 U.S.C.A. § 1983 (West Supp. 1997) and three interrelated statutes -- the Individuals with Disabilities Education Act, see 20 U.S.C.A. §§ 1400-1485 (West 1990 & Supp. 1997); the Rehabilitation Act of 1973, see 29 U.S.C.A. §§ 701-96 (West 1985 & Supp. 1997); and the Americans with Disabilities Act, see 42 U.S.C.A. §§ 12101-12213 (West 1995 & Supp. 1997) -- challenging the conditions of confinement of juveniles housed in the Department of Juvenile Justice facilities operated by the State. Plaintiffs alleged that the State violated a number of their constitutional and federal statutory rights. After exhaustive discovery and a three-month bench trial, the district court concluded that certain aspects of confinement violated Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.[3] Plaintiffs, therefore, prevailed in proving that actual constitutional violations occurred in the juvenile facilities. In its order of January 25, 1995, the district court cited constitutional and statutory deficien-

_____

[3] The district court joined the First, Ninth, Tenth, and Eleventh Circuits in reviewing the conditions at state juvenile facilities under the standards of the Due Process Clause of the Fourteenth Amendment. See Gary H. v. Hegstrom, 831 F.2d 1430, 1431-32 (9th Cir. 1987); H.C. ex rel. Hewett v. Jarrard, 786 F.2d 1080, 1084-85 (11th Cir. 1986); Santana v. Collazo, 714 F.2d 1172, 1179 (1st Cir. 1983); Milonas v. Williams, 691 F.2d 931, 942 & n.10 (10th Cir. 1982). But see Nelson ex rel. Nelson v. Heyne, 491 F.2d 352, 355 (7th Cir. 1974) (applying the cruel and unusual punishment test of the Eighth Amendment). This issue was not appealed.

cies in the areas of fire safety, food services, medical services, programming, overcrowding, and staffing levels. See Alexander S. ex rel. Bowers v. Boyd, 876 F. Supp. 773, 786-95 (D.S.C. 1995). The court also found that the Plaintiffs' constitutional rights had been infringed upon by the improper use of CS gas, a potent form of tear gas used for riot control, and by the State's failure to adequately identify those Plaintiffs who suffer from a "disability" for purposes of the facilities' educational programs. See id. at 785-88. Accordingly, the district court ordered the State to devise and implement a remedial plan to cure each violation. It also stated its intent to appoint a special master to monitor the implementation of the program. See id. at 803-05. The State did not appeal.

On November 22, 1995, after submissions and arguments, the district court issued an order awarding Plaintiffs attorney's fees for work relating to the January 1995 order. The State appealed the fee award, but argued only that the rates, hours, and documents submitted by Plaintiffs were inaccurate. In fact, during oral arguments before this court held two weeks after the effective date of the PLRA, the State specifically disavowed any claim that the PLRA limited the fee award.[4] Finding no error, we affirmed the award. See Alexander S. ex rel. Bowers v. Boyd, 89 F.3d 827 (4th Cir. 1996) (unpublished).

_____

[4] Specifically, the State was asked

> if it made any additional argument based on the recent amendments to the Civil Rights of the Institutionalized Persons Act, 42 U.S.C. § 1997 (1994). The State specifically disavowed any such claims. We note that it is not at all clear whether the 1996 amendments, which apply only to persons confined to a "jail, prison or other correctional facility" apply to juveniles confined in juvenile institutions, or even if they did whether they would apply retroactively. However, we need not reach that question here in view of the State's decision not to pursue any argument under the Act.

Alexander S. ex rel. Bowers v. Boyd, 89 F.3d 827 (4th Cir. 1996) (unpublished).

8

B.

On May 25, 1995, the State submitted its proposed remedial plan in accordance with the January 1995 district court order. The district court approved the plan, which provided, in pertinent part, for an increase in the facilities' security staff. The amount of the staffing increase was expressly dependent upon an anticipated reduction in the juvenile facilities' population.

On August 30, 1995, the district court held a status conference to assess the remedial plan's implementation progress. The court-appointed special master testified that the existing conditions "caused him to fear for the safety of the juveniles." (J.A. at 20.) At this conference, Plaintiffs made an oral motion to increase security staffing at the various juvenile facilities. Plaintiffs subsequently submitted in writing an Emergency Motion for Temporary Relief. Plaintiffs then filed a superseding Motion to Modify the Plan with regards to security staffing needs due to an increase, rather than the anticipated decrease, in the number of juveniles detained in the facilities.

In December 1995, the district court held a hearing on the Plaintiffs' motion to modify the remedial plan to increase staffing. During this hearing, the State agreed to revise its proposed plan. Following the December modification hearing, the district court issued an interim order on February 16, 1996, in which it found that the level of security staffing remained constitutionally inadequate and ordered the State to institute the revised plan presented during the modification hearing. The district court also found that Plaintiffs were the "prevailing party" on this issue and were entitled to reasonable attorney's fees pursuant to 42 U.S.C.A. § 1988 (West 1994 & Supp. 1997). In addition, the district court acknowledged Plaintiffs' future entitlement to attorney's fees for ongoing monitoring activities and set up a procedure for the submission of fees.[5]

_____

[5] The district court stated that it would rely on previously filed affidavits regarding general attorney background information and billing rates, except as to any new attorneys, absent specific objection from the State. The district court then instructed:

> [The State] shall be allowed ten days after service of plaintiffs initial affidavits and billing documents to draw the court's atten-

C.

Plaintiffs subsequently submitted separate motions for attorney's fees related to, among other things, the December modification hearing and subsequent monitoring activities. The State timely filed objections arguing that the "results obtained" in the December modification hearing did not justify the fee sought and that charges for secretarial services and work performed preparing a separate attorney's fee appeal and a December 1993 memorandum were improper. The State also submitted a supplemental memorandum, after the enactment of the PLRA, arguing that the limitations contained in § 803(d) of the PLRA applied to Plaintiffs' pending fee requests. After considering the State's various objections, the district court issued an order on May 29, 1996, awarding Plaintiffs attorney's fees for services performed by counsel from May 1995 until February 1996, including the December 1995 modification hearing. The district court specifically concluded that it did not need to determine the applicability of the PLRA because the fees at issue were all incurred prior to the PLRA's enactment date.

Meanwhile, Plaintiffs continued to submit fee applications to the district court for monitoring work performed from February through July 1996. The State again timely filed objections to the fees, in which the State reiterated its position that the restrictions on attorney's fees set forth in § 803(d) of the PLRA applied to the Plaintiffs' fee applications. However, by order dated August 30, 1996, the district court awarded Plaintiffs additional fees for monitoring activities from February through July 1996 based on pre-PLRA standards. After conducting an in-depth analysis, the district court concluded that § 803(d) did not apply to Plaintiffs because the juveniles, while admittedly "prisoners" under the PLRA, were not "confined to a

_____

tion to any perceived inadequacies in the form of plaintiffs' fee submission to the court. Plaintiffs shall be allowed ten days after the filing of [the State's] specification of inadequacy to supplement the previously filed documents. [The State] shall then be allowed the usual fifteen days after service of plaintiffs' supplementation to provide any objections to the content of plaintiffs' submission.

(J.A. at 30.)

10

prison, jail, or other correctional facility" as that phrase is defined by 42 U.S.C.A. § 1997 (West 1994), a section left unaltered by the PLRA. And again, on October 2, 1996, the district court, over the State's objection that the PLRA limited the available fee award, awarded Plaintiffs attorney's fees based on pre-PLRA standards for monitoring performed in August 1996. We have consolidated the State's timely appeals of the orders of February 16, May 29, August 30, and October 2, 1996.

## II.

On April 26, 1996, Congress enacted the PLRA, landmark legislation that, by imposing new restrictions on class action and individual prisoner lawsuits, sharply circumscribes a prisoner's ability to seek remedies for alleged unconstitutional prison conditions. To limit federal courts' involvement in the daily operation of federal and state correctional facilties, the PLRA made significant changes to Titles 18, 28, and 42 of the United States Code. For the purposes of this appeal, we are concerned primarily with §§ 802 and 803 of the PLRA (codified at 18 U.S.C.A. § 3626 (West Supp. 1997) and 42 U.S.C.A. § 1997e (West Supp. 1997)).[6]

_____

[6] Although the present appeal focuses on the language of §§ 802 and 803 of the PLRA, the Act amended numerous sections of Titles 18, 28, and 42. Section 802 amended 18 U.S.C.A. § 3626 to narrow the relief available to prisoners claiming unconstitutional conditions of confinement. Section 803, in addition to completely revising 42 U.S.C.A. § 1997e, made technical revisions to 42 U.S.C.A. §§ 1997a, 1997b, and 1997c. Section 804 of the PLRA amended 28 U.S.C.A. § 1915 to require, among other things, prisoners proceeding in forma pauperis to pay a partial filing fee before filing a lawsuit or proceeding with an appeal, and § 805 created 28 U.S.C.A. § 1915a which requires district courts to dismiss any frivolous claims brought by a prisoner. Section 806 of the PLRA amended 28 U.S.C.A. § 1346 and now prohibits a convicted felon from bringing a civil action alleging mental or emotional injury while in custody without a prior showing of physical injury. Section 807 directs that any damages awarded to a "prisoner" in connection with a civil action brought against any "jail, prison or correctional facility" shall be used to satisfy any pending restitution orders against the prisoner, and § 808 provides that the victims of the crime for which the prisoner is incarcerated are to be notified of the pending payment of these damages.

11

Prior to the PLRA, § 3626 of Title 18 was titled "Appropriate remedies with respect to prison crowding." Section 802 of the PLRA, however, amended the statute to provide the specific avenue through which prisoners may institute class actions to obtain prospective relief for prison conditions in general, not only for prison crowding. See 18 U.S.C.A. § 3626(a), and (g)(2) (setting forth the requirements for obtaining prospective relief in "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison"). In fact, Plaintiffs agreed at oral argument that the Plaintiffs' underlying § 1983 action, if initiated after April 26, 1996, properly would have been brought under § 802 of the PLRA, in addition to 42 U.S.C.A. § 1983 (West Supp. 1997).

Section 802 limits the remedies available in actions challenging conditions of confinement brought under any Federal law, as in this action, which was brought under 42 U.S.C.A. § 1983. Commonly known as the "Stop Turning Out Prisoners" (STOP) provisions, § 802 limits a federal court's ability to grant prospective relief. Specifically, § 802's provisions restrict preliminary injunctive relief, see 18 U.S.C.A. § 3626(a)(2); prohibit the imposition of population caps except as a last resort, see 18 U.S.C.A. § 3626(a)(3); allow for the immediate termination of prospective relief after a limited time, see 18 U.S.C.A. § 3626(b); restrict approval of consent decrees, see 18 U.S.C.A. § 3626(c); require prompt judicial decisions on motions to modify or terminate relief, see 18 U.S.C.A. § 3626(e); and limit the authority and payment of special masters, see 18 U.S.C.A. § 3626(f). Congress specifically made the STOP provisions of § 802 applicable to juvenile prisoners detained in juvenile detention facilities who challenge the conditions of their confinement in "any civil action with respect to prison conditions." 18 U.S.C.A. § 3626(a)(1); see also 18 U.S.C.A. § 3626(g)(5) (defining prison to include "any Federal, State, or local facility that incarcerates or detains juveniles or adults").

_____

Section 809 created 28 U.S.C.A. § 1932 which provides for the revocation of earned released credit from an "adult convicted of a crime and confined in a Federal correctional facility" upon the filing of a claim for a malicious purpose or solely for harassment, or for falsely testifying before the court, and amended 18 U.S.C.A. § 3624 regarding the revocation of earned released credit.

12

In an attempt to stem the tide of frivolous lawsuits initiated by federal and state prisoners, Congress passed § 803 of the PLRA (codified at 42 U.S.C.A. § 1997e), which places new procedural restrictions on lawsuits "with respect to prison conditions" whether brought under § 1983 or any other Federal law by "a prisoner confined in any jail, prison, or other correctional facility." In addition to mandating administrative exhaustion, § 803 of the PLRA, entitled "Suits by prisoners," provides for the immediate dismissal of frivolous lawsuits, see 42 U.S.C.A. § 1997e(c); limits recovery for mental and emotional injuries, see 42 U.S.C.A. § 1997e(e); limits the removal of a prisoner from confinement during pretrial proceedings, see 42 U.S.C.A. § 1997e(f); allows the waiver of the right to reply to prisoner lawsuits, see 42 U.S.C.A. § 1997e(g); and, as is pertinent to this action, restricts the availability and amount of attorney's fees recoverable by prisoners under 42 U.S.C.A. § 1988, see 42 U.S.C.A. § 1997e(d).

III.

This appeal presents three issues. First, are the PLRA's limitations on attorney's fees applicable to juveniles incarcerated in juvenile facilities? Second, if applicable to juveniles, are the limitations applicable to fee awards for work performed, but not compensated, prior to the enactment of the PLRA? And third, do the PLRA's limitations on attorneys' fees impose new standards for determining the appropriateness of a fee award in a prison conditions suit? We address these issues in turn. Although we generally review a district court's award of attorney's fees for an abuse of discretion, see Plyler v. Evatt, 902 F.2d 273, 277-78 (4th Cir. 1990), we review the applicability of statutory amendments de novo, see United States v. Murphy, 35 F.3d 143, 145 (4th Cir. 1994) ("Interpreting a statute is a legal issue that successive courts freely review, and hence our review is plenary.").

A.

The State contends that the PLRA's limitations on attorney's fees apply to the district court's award of attorney's fees to the Plaintiffs arising from the Plaintiffs' successful § 1983 action alleging unconstitutional conditions of confinement in South Carolina's juvenile facilities. Section 1988 provides that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . the court, in its discre-

13

tion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C.A. § 1988(b) (West Supp. 1997). Therefore, § 1988 is the statutory mechanism under which Plaintiffs sought attorney's fees before the district court. Section 803 of the PLRA, however, limits the district court's ability to award attorney's fees in lawsuits brought on behalf of "a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988." § 803(d) (codified at 42 U.S.C.A. § 1997e(d)(1)). Whether the State is correct in arguing that these limitations apply to the attorney's fees awarded in the May, August, and October orders depends on whether juveniles detained in the State's juvenile facilities are "prisoners" confined to a "jail, prison, or other correctional facility."

It is undisputed that the term "prisoner" in § 803(d) of the PLRA encompasses incarcerated juveniles. Section 803(d) provides that "the term `prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 803(d) (codified at 42 U.S.C.A. § 1997e(h)). "Prisoner" is similarly defined in § 802 of the PLRA.**7** Therefore, resolution of whether Plaintiffs attorney's fees may be limited turns on whether Congress intended the phrase "jail, prison, or other correctional facility" to include juvenile detention facilities when it enacted the PLRA.

1.

Section 803 of the PLRA does not expressly define the phrase "jail, prison, or correctional facility." However, § 802 of the PLRA, which sets forth the procedures through which a class of prisoners such as Plaintiffs may contest constitutional violations pertaining to prison conditions, defines "prison" as "any Federal, State, or local facility that incarcerates or detains juveniles or adults accused of, convicted

---

**7** Specifically, § 802(a) (codified at 18 U.S.C.A. § 3626(g) (West Supp. 1997)), defines prisoner as "any person subject to incarceration, detention, or admission to any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

14

of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 802(a) (codified at 18 U.S.C.A. § 3626(g)(5)). Accordingly, the State contends that because Congress, when enacting the PLRA, intended prisons to include juvenile facilities for the purpose of stating a cause of action under § 802, this court should construe prisons to include juvenile facilities for the purpose of awarding attorney's fees under § 803(d).

Plaintiffs, however, present four arguments in support of their position that the attorney's fees limitations set forth in § 803(d) are inapplicable to this case. First, relying on the definition of "institution" found in 42 U.S.C.A. § 1997 (West 1994), Plaintiffs contend that Congress did not intend § 803(d) of the PLRA to apply to juvenile facilities. Section 1997, the definitional section applicable to 42 U.S.C.A. § 1997e (the statutory provision containing the attorney's fees limitations of the PLRA), was left unrevised by the PLRA. It defines "institution" as any facility or institution owned and operated by the State which is

(i) for persons who are mentally ill, disabled, or retarded, or chronically ill or handicapped;

(ii) a jail, prison, or other correctional facility;

(iii) a pretrial detention facility;

(iv) for juveniles --

(I) held awaiting trial;

(II) residing for any State purpose in such facility or institution (other than a residential facility providing only elementary or secondary education that is not an institution in which reside juveniles who are adjudicated delinquent, in need of supervision, neglected, placed in State custody, mentally ill or disabled, mentally retarded, or chronically ill or handicapped); or

15

     (v) providing skilled nursing, intermediate or long-term
     care, or custodial or residential care.

42 U.S.C.A. § 1997(1). In defining "institution," § 1997 differentiates between a "jail, prison, or other correctional facility" and facilities for juveniles, like the ones that are the subject of this action. Therefore, as Plaintiffs argue, one could conclude by negative implication that since the PLRA attorney's fee limitations in § 803(d) of the Act (codified at 42 U.S.C.A. § 1997e), apply only to prisoners confined to a "jail, prison, or other correctional facility," and since 42 U.S.C.A. § 1997(1) distinguishes between a "jail, prison, or other correctional facility" and a juvenile facility, the PLRA's limitations on attorney's fees do not apply to juvenile Plaintiffs. Plaintiffs argue that if Congress had intended for the all-encompassing definition of "prison" in § 802 to apply to the attorney's fees limitations in § 803, it would have modified the definition of "institution" in § 1997 to omit the three separate categories of facilities and to keep the terminology in Title 42 consistent. See United States v. Langley, 62 F.3d 602 (4th Cir. 1995) ("[I]t is proper to consider that Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction." (quotations omitted)), cert. denied, 116 S. Ct. 797 (1996). Therefore, Plaintiffs urge this court to adopt the more limited definition of "jail, prison, or other correctional facilities" found in § 1997, which, by implication, does not include juvenile facilities.

Second, Plaintiffs rely upon the fact that, while both §§ 802 and 803 of the PLRA contain definitions of "prisoner," which includes juveniles, Congress defined "prison" to include juvenile facilities only in § 802. The district court agreed, reasoning that this omission was intentional, "[g]iven the ease with which the[§ 802] definition could have been included in [§ 803]." (J.A. at 71.)

Third, Plaintiffs cite Congress's historically different treatment of adult and juvenile prisoners. Again, the district court agreed, relying on (1) the distinct difference between the ability of juveniles and adults to protect their own interests; (2) the probability that juveniles' rights will be pursued only in class actions which require a higher level of legal skill and long-term commitment of counsel; and (3) that

16

the clear distinction made between juvenile facilities and adult prisons in 42 U.S.C.A. §§ 1997 and 1997a (West 1994) was left unchanged by the PLRA.**8** Because Congress did not amend these provisions, the district court reasoned that Congress intended to maintain the distinction between juvenile facilities and adult prisons.

Finally, Plaintiffs rationalize the apparent inconsistency of defining a juvenile not incarcerated in a "prison" as a "prisoner." The district court reconciled the definitions by concluding that "[t]his would simply place juveniles who have been transferred to adult facilities on the same footing as other adult prisoners." (J.A. at 72.) Therefore, according to the district court, all inmates in adult prisons are subject to the same rules, regardless of age.

2.

In a case that turns on statutory construction, we begin by examining the literal and plain language of the statute. See Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997); Williams v. U.S. Merit Sys. Protection Bd., 15 F.3d 46, 49 (4th Cir. 1994). If the "statutory language is unambiguous and the statutory scheme is coherent and consistent," our inquiry ends. Robinson, 117 S. Ct. at 846 (quotation omitted); Murphy, 35 F.3d at 145. "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson, 117 S. Ct. at 846 (citing Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992)). In interpreting statutory language, words are generally given their common and ordinary meaning. See Murphy, 35 F.3d at 145.

Although Congress did not define the phrase "jail, prison, or other correctional facility" in § 803 of the PLRA, the plain meaning of the

_____

**8** Under 42 U.S.C.A. § 1997a (West 1994), the Attorney General has the authority to institute a civil action on behalf of a person residing in or confined to an "institution," as defined by 42 U.S.C.A. § 1997 (West 1994), seeking relief for violations of statutory or constitutional rights. However, § 1997a specifically limits the Attorney General's authority to bring actions on behalf of a person confined to a "jail, prison, or other correctional facility" to constitutional violations only.

17

phrase undoubtedly encompasses juvenile detention facilities. "Jail" is commonly defined as a "place for the lawful confinement of persons" or a "prison." Webster's II New Riverside University Dictionary 650 (1988). It is also defined as a "prison" or a place "usually used to hold persons either convicted of misdemeanors (minor crimes) or persons awaiting trial or as a lockup for intoxicated and disorderly persons." Black's Law Dictionary 834 (6th ed. 1990). "Correctional institution" is a "generic term describing prisons, jails, reformatories and other places of correction and detention." Id. at 344. And, "house of correction" is defined as a "prison for the reformation of petty or juvenile offenders." Id. Congress did not add any language limiting the scope of these words to adult facilities. Rather, Congress prefaced the phrase with the word "any." In a similar context, the Supreme Court has noted that "the word `any' has an expansive meaning." United States v. Gonzales, 117 S. Ct. 1032, 1035 (1997) (defining "any" as "one or some indiscriminately of whatever kind" (citation omitted)). Therefore, we must construe the phrase to include all jails, prisons, and correctional facilities, including those housing juveniles. See id. (construing the statutory phrase "any other term of imprisonment" as referring to "all terms of imprisonment"). Further, the language "or other correctional facility," is broad and inclusive, rather than exclusive. Therefore, the plain meaning of the statutory language suggests that juvenile detention facilities should be included within the scope of the phrase "jail, prison, or other correctional facility."

We acknowledge that Congress placed the attorney's fees limitations provision, applicable to prisoners confined to "jail, prison, or other correctional facility," into Title 42, and that § 1997 of Title 42 distinguishes between a "jail, prison, or other correctional facility" and facilities housing juveniles. Therefore, we address the apparent conflict. Because, however, the PLRA's definition of "prison" (which includes juvenile facilities) is inconsistent § 1997's implicit definition of "jail, prison, or other correctional facility" (which excludes juvenile facilities), we conclude that the phrase is ambiguous. Cf. Robinson, 117 S. Ct. at 847 (holding that the term "employee" standing alone is ambiguous in Title VII because some sections of Title VII define the term to include former employees, while other sections do not).

Having determined that the phrase at issue is ambiguous, we apply the traditional tools of statutory construction. Id. at 848. In doing so,

18

"[w]e begin with the premise that all parts of the statute must be read together, neither taking specific words out of context, nor interpreting one part so as to render another meaningless." United States v. Snider, 502 F.2d 645, 652 (4th Cir. 1974) (citations omitted). A cardinal rule of statutory construction is that statutes which are originally part of the same Act should be construed together. Cf. Robinson, 117 S. Ct. at 849 (interpreting ambiguous statutory term so as to be "more consistent with the broad context of [the Act] and the primary purpose of the [section at issue]"); New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 115 S. Ct. 1671, 1677 (1995) ("[W]e begin as we do in any exercise of statutory construction with the text of the provision in question, and move on, as need be, to the structure and purpose of the Act in which it occurs."); United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 455 (1993) ("Statutory construction is a holistic endeavor and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." (quotation and citation omitted)). More specifically, identical terms within an Act should be given the same meaning. See Estate of Cowart, 505 U.S. at 479 (1992); Director v. Newport, 8 F.3d 175, 184 n.8 (4th Cir. 1993). In other words, we must define § 803(d)'s "jail, prison, or other correctional facility" phrase so that it harmonizes with the other provisions of the PLRA, promotes the goals of the PLRA, and gives each provision purpose.

Section 802 of the PLRA defines the term "prison" as any facility that "detains juveniles or adults accused of, convicted of, sentenced for, [or] adjudicated delinquent for" violating criminal law. § 802(a) (codified at 18 U.S.C.A. § 3626(g)(5)). Given this, and the fact that § 803(d) includes an incarcerated juvenile within its definition of "prisoner", we conclude that the phrase "jail, prison, or other correctional facility" found in § 803(d) of the PLRA (codified at 42 U.S.C.A. § 1997e) must include juvenile facilities such as the ones that are the subject of this action. This construction of the statute makes the PLRA internally consistent and best furthers Congress's intentions.

In enacting the PLRA, Congress had far-reaching goals, and nothing in the Act indicates an intent to omit juveniles confined in juvenile facilities from its impact. To the contrary, by enacting § 803 of

19

the PLRA, Congress affirmatively amended 42 U.S.C.A. § 1997e to replace the word "adult" with the word "prisoner," and then defined "prisoner" to expressly include juveniles adjudicated delinquent of crimes. In addition, § 809(a) of the PLRA (codified at 28 U.S.C.A. § 1932 (West Supp. 1997)) specifically limits the revocation of earned release credit to "adult[s] convicted of a crime and confined in a Federal correctional facility" if the district court concludes that they filed a civil claim for a malicious purpose, solely to harass the party against which it was filed, or if the claimant presents false evidence to the court. It would be unnecessary to expressly limit § 809 to adults if the term "correctional facility" only applied to detention facilities housing adults. A comparison of these two sections of the PLRA demonstrates that Congress recognized the difference between juveniles and adults when enacting the PLRA, and intended to impose the new provisions of § 803 of the Act (codified at 42 U.S.C.A. § 1997e), including the restrictions on attorney's fees found in subsection (d), on all "prisoners," including juvenile prisoners.

Furthermore, Plaintiffs concede that § 802 of the PLRA (codified at 18 U.S.C.A. § 3626) limits the remedies available to juveniles confined in juvenile facilities in prison conditions lawsuits. We can discern no reason for Congress to limit the more important substantive remedies available to juveniles under § 802 of the PLRA, yet not limit the availability of attorney's fees under § 803. The purpose of the attorney's fees provision is to encourage private attorneys to represent plaintiffs bringing meritorious lawsuits to expose unconstitutional prison conditions. The limitations placed on fee awards by § 803 do not undermine this purpose. If private attorneys find that fee limitations hinder their ability effectively to litigate these cases, 42 U.S.C.A. § 1997a (West 1994 & Supp. 1997), left intact by the PLRA, authorizes the Attorney General to institute actions on behalf of persons residing in or confined to a jail, prison, or other correctional facility if the Attorney General has reasonable cause to believe that such persons are being subjected to unconstitutional conditions of confinement. See 42 U.S.C.A. § 1997a(a).

Moreover, we are not persuaded by Plaintiffs' argument that Congress intended the definition of "prisoner" in § 803 to include juveniles only when they are confined to adult prisons. This construction does not harmonize the provisions of the PLRA. The Juvenile Prose-

20

cution Act of 1994 prohibits the placement of juveniles in adult federal facilities. See 18 U.S.C.A. § 5039 (West Supp. 1997) ("No juvenile committed, whether pursuant to an adjudication of delinquency or conviction for an offense, to the custody of the Attorney General may be placed or retained in an adult jail or correctional institution. . . ."). Also, a juvenile who is simply "accused of" a crime or even "adjudicated delinquent" would not, under normal circumstances, be confined to an adult state facility. Therefore, to adopt Plaintiffs' reasoning would render the "accused of" and "adjudicated delinquent" language in the definition of "prisoner" superfluous. Therefore, while we recognize the apparent conflict with the definition of "institution" found in 42 U.S.C.A. § 1997, we hold that a limitation of the phrase "jail, prison, or other correctional facility" to adult prison facilities in § 803 of the PLRA would be inconsistent with other language within the section, other sections of the Act, and the plain and usual meanings of the relevant terms. As a result, we conclude that Plaintiffs are subject to the attorney's fees limitations of the PLRA because they are "prisoner[s] . . . confined to any jail, prison, or other correctional facility." § 803(d) (codified at 42 U.S.C.A. § 1997e(d)).

B.

Having determined that the PLRA's limitations on attorney's fees apply to Plaintiffs, we next address the applicability of the provisions to the fees awarded in the May and August orders for services performed by Plaintiffs' counsel prior to the enactment of the PLRA.

1.

Plaintiffs argue that the State waived application of the provisions to work performed prior to the enactment of the PLRA during oral arguments before this court on May 6, 1996. At that time, the State was appealing a November 22, 1995 order in which the district court awarded Plaintiffs attorneys' fees for work related to this ongoing litigation. As previously noted, see supra n.4, in response to inquiry during oral argument as to whether the State had any argument based on the attorney's fees provisions contained in the recently enacted PLRA, the State "specifically disavowed any such claims." Alexander S. ex rel. Bowers v. Boyd, 89 F.3d 827 (4th Cir. 1996) (unpublished).

21

We do not consider the State's waiver of application of the PLRA's attorney's fees provision to the November 1995 order to be a waiver of the statute's applicability to all future awards based on work completed prior to April 26, 1996. The November order is a separate order, independent of the February, May, August, and October orders currently being appealed. To restrict the State's arguments in this appeal to those argued in a previous appeal is obviously impermissible. Furthermore, because the parties have not, prior to this appeal, litigated the applicability of the PLRA's attorney's fees limitations before this Court, we are not bound by res judicata.

The State timely raised the statute's applicability for the district court's consideration prior to the issuance of the May order. In its memorandum, the State argued that the restrictions of § 803(d) (codified at 42 U.S.C.A. § 1997e(d)) applied to Plaintiffs' pending fee applications for work performed from May 1995 until February 1996. The State reiterated this position in later memorandums filed in objection to Plaintiffs' subsequent fee applications. As a result, we conclude that the State preserved the issue of the amendments' application to all awards made by the district court subsequent to the enactment of the PLRA.

2.

Section 803(d) of the PLRA provides that "[n]o award of attorney's fees" ordered in an action brought by a prisoner claiming unconstitutional conditions of confinement "shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel." § 803(d) (codified at 42 U.S.C.A. § 1997e(d)(3)) (emphasis added). The plain language of the statute mandates that all attorney's fees awarded after April 26, 1996, in any prison conditions lawsuit comply with the restrictions imposed by the PLRA. **9** See Williams v.

─────────────────────────────────────────────

**9** While we are specifically analyzing the language codified at 42 U.S.C.A. § 1997e(d)(3) in this section to determine its applicability to fees incurred prior to, but awarded subsequent to the enactment of the PLRA, the same analysis applies to the fee restrictions contained in subsections (d)(1) (heightening eligibility requirements for attorney's fees) and (d)(2) (limiting fees available when a monetary judgment is awarded). Both § 1997e(d)(1), discussed at III.C.2., and (d)(2), which is inapplicable to this case, expressly apply to all fee awards subsequent to the enactment of the PLRA.

U.S. Merit Sys. Protection Bd., 15 F.3d 46, 49 (4th Cir. 1994) (stating that "[s]tatutory construction begins with an examination of the literal language of the statute" (quotations omitted)). There is, quite simply, no award until an order is issued, and all of the orders appealed were entered after the statute's enactment.**10** Congress could have easily inserted language to restrict the application of these limitations to awards for work performed subsequent to the PLRA's enactment, but it did not do so. Accordingly, the plain language of § 803(d) of the PLRA (codified at 42 U.S.C.A. § 1997e(d)) mandates that the attorney's fees limitations apply to the awards made in the May, August, and October orders, regardless of when the work being compensated was performed.

We acknowledge that other courts that have addressed the applicability of the attorney's fees provisions of § 803 of the PLRA to pending cases have refused to apply the limitations, concluding that such application would have an impermissible retroactive effect. See Jensen v. Clarke, 94 F.3d 1191, 1201-1203 (8th Cir. 1996) (conclud-

_____

**10** The Dissent argues that "the`award' of attorney's fees occurred on February 16, 1996 when the court set out its instructions regarding how further [monitoring] fees would [be] paid." Dissenting Op. at 62. We disagree. While the district court recognized that Plaintiffs were "entitled" to attorney's fees for future monitoring activity in the February 16 order, it did not award fees. Rather, its limited ruling on this issue was a finding that it was "appropriate . . . for plaintiffs' counsel to play some role in this monitoring process" and to be compensated. The district court stated that its decision to "consider fee applications for monitoring activity [was] not . . . prior approval of any fee request." (J.A. at 29.) As the Dissent concedes, the district court had yet to determine "at what rate and for how many hours" counsel was to be compensated. Dissenting Op. at 62. To conclude, as the Dissent does, that the district court awarded Plaintiffs attorney's fees on February 16 for all future monitoring activity, without assessing the reasonableness of such fees, is to condone pure speculation and arbitrariness by the district court. We decline to interpret the district court's order in such a way. Moreover, to adopt the Dissent's rationale would require us to find the PLRA's fee restrictions inapplicable to all attorney's fees awarded in this case for monitoring activity related to the implementation of the remedial plan, even when the monitoring occurred subsequent to April 26, 1996. Even the Dissent does not propose this result.

23

ing that application of the attorney's fees provisions in § 803(d) to Plaintiffs and their attorneys who had worked for "literally years" on the assumption that their fees would be based on 42 U.S.C.A. § 1988 would be "manifestly unjust"); Cooper v. Casey, 97 F.3d 914, 921 (7th Cir. 1996) (same); see also Weaver v. Clarke, 933 F. Supp. 831, 834 (D. Neb. 1996) (refusing to apply § 803(d)'s limitations when determining attorney's fees awarded after the enactment of the PLRA for work performed prior to the enactment of the PLRA). But cf. Hadix v. Johnson, 947 F. Supp. 1113, 1114-1115 (E.D. Mich. 1996) (concluding that § 803 of the PLRA applies when determining attorney fee awards for work completed after enactment of the PLRA in a prison conditions case arising prior to enactment of the PLRA). With all due respect to our sister Circuits, we find their analyses flawed.**11**

In Landgraf v. USI Film Prods., 114 S. Ct. 1483 (1994), the Supreme Court outlined a three-step inquiry to be undertaken when determining whether a court should apply a new statute to actions that occurred prior to the enactment of the statute. See id. at 1505. First, we ascertain whether Congress expressly prescribed the reach of the statute. Although we are bound by Congress's directive, see id., nothing in § 803 of the PLRA expressly prescribes its reach. Unlike § 802, which Congress expressly made applicable to pending cases, § 803 contains no stated effective date. We decline to draw any negative

_____

**11** Contrary to the Dissent's assertion that we are creating a circuit split as to the retroactive application of the PLRA's attorney's fees restrictions, Plaintiffs' case is distinguishable from both Jensen v. Clarke, 94 F.3d 1191 (8th Cir. 1996), and Cooper v. Casey, 97 F.3d 914 (7th Cir. 1996), in one key aspect -- the district court made the attorney's fee awards in both Jensen and Cooper prior to the enactment of the PLRA. Therefore, the attorney's fees limitations of § 803 were inapplicable to the awards based on the plain language of the statute regardless of any possible retroactivity problems. Nevertheless, the courts conducted a retroactivity analysis and both courts concluded that applying the fee limitations to pending cases would be "manifestly unjust" because, as the Eighth Circuit lamented, Plaintiffs and their attorneys "have litigated for literally years under . . . the assumption that Section 1988 would apply to this case." Jensen v. Clarke, 94 F.3d 1191, 1203 (8th Cir. 1996). "If we apply the Act, those expectations will be foiled. Thus, application of the Act in this case would have the retroactive effect of disappointing reasonable reliance on prior law." Id. at 1202.

24

inferences from the express inclusion of a provision making § 802 applicable to pending cases and the absence of the same from § 803. Cf. id. at 1494 (rejecting argument that "because Congress provided specifically for prospectivity in two places . . . we should infer that it intended the opposite for the remainder of the statute").

Absent an express directive from Congress, we must apply a newly enacted statute to pending cases unless doing so would give the statute "retroactive effect." Id. at 1503 ("`[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.'" (quoting Bradley v. School Bd. of Richmond, 416 U.S. 696, 711 (1974))). If application of the new statute would have retroactive effect, then "our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id. at 1505. However, "[a] statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." Id. at 1499 (citation omitted); see also id. at 1498 ("[T]he potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope."). Rather, the Supreme Court has instructed us that application of a new statute to a pending case has a retroactive effect only when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."**12** Id. at 1505. In other words, the court must determine "whether the new provision attaches new legal consequences to events completed before its enactment." Id. at 1499.

In Landgraf, the Supreme Court recognized several types of statutes that, even though enacted after the events giving rise to the

_____

**12** While application of the PLRA's fee limitations may upset the expectations of Plaintiffs' counsel, it cannot be said that the imposition of the restrictions directly affects the Plaintiffs. Therefore, because a statute has a retroactive effect under Landgraf only when it negatively impacts a party's expectations or rights, statutory restrictions as to the amount and availability of attorney's fees will not generally raise retroactivity problems. See Landgraf v. USI Film Prods., 114 S. Ct. 1483, 1503 (1994).

25

underlying lawsuit, could be applied to pending cases without having a retroactive effect. For example, the Court noted that application of a new statute that affects only secondary, rather than primary, conduct does not give rise to concerns about retroactivity.**13** See id. at 1502. The Court then specifically cited attorney's fee determinations as an example of secondary conduct that "[does] not resemble the cases in which we have invoked the presumption against statutory retroactivity." Id. at 1503; see also id. ("Attorney's fee determinations . . . are `collateral to the main cause of action' and `uniquely separable from the cause of action to be proved at trial.'" (quoting White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451-52 (1982))).

We conclude, therefore, that application of the PLRA's fee limitations to the awards made in the district court's May and August orders does not have an impermissible retroactive effect because the determination of attorney's fees awards, which are collateral to the main cause of action, does not attach new legal consequences to completed events. Moreover, the modifications made by § 803 of the PLRA to a plaintiff's entitlement to attorney's fees are not so fundamentally unfair as to result in manifest injustice. Cf. Farrar v. Hobby, 506 U.S. 103, 115 (1992) (instructing that § 1988 was "never intended to produce windfalls to attorneys" (quotation omitted)); see also id. at 122 (stating that § 1988 "is not a relief Act for lawyers" (quotation omitted) (O'Connor, J., concurring)). As a result, the district court erred when it failed to apply the law in effect at the time it entered its May and August orders.

---

**13** In Landgraf, the Court noted several additional examples of new statutes whose application to pending cases was proper. These included statutes whose plain language unambiguously requires application to pending cases, see United States v. Schooner Peggy, 1 Cranch 103, 5 U.S. 103 (1801); statutes authorizing or affecting the propriety of prospective relief, see American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184 (1921); statutes conferring or ousting jurisdiction, see Bruner v. United States, 343 U.S. 112 (1952); and statutes revising procedural rules, see Collins v. Youngblood, 497 U.S. 37 (1990). See Landgraf v. USI Film Prods., 114 S. Ct. 1483, 1501-1502 (1994) (collecting cases).

C.

Finally, we address the new standards imposed by the PLRA for determining a fee award in a prison conditions suit. Section 803(d) of the PLRA requires the district court to conduct a three-step analysis when reviewing attorney's fees requests. First, the court must be satisfied that the plaintiff is eligible for fees under 42 U.S.C.A. § 1988. Prior to the enactment of the PLRA, a plaintiff in a prison conditions lawsuit obtained attorney's fees solely through 42 U.S.C.A. § 1988. Section 1988 allows the district court to award reasonable attorney's fees to a prevailing party "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983." 42 U.S.C.A. § 1988(b). "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." Farrar, 506 U.S. at 111 (citation omitted); accord S-1 and S-2 v. State Bd. of Ed., 21 F.3d 49, 51 (4th Cir. 1994) (en banc). Moreover, the fee request must be "reasonable." This Court has articulated twelve factors which the district court should consider when determining the reasonableness of an attorney's fee request. See Barber v. Kimbrell's Inc., 577 F.2d 216 (4th Cir. 1978). Second, § 803(d) of the PLRA requires the plaintiff to prove that "the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights . . . and . . . is proportionately related to the court ordered relief . . . or . . . was directly and reasonably incurred in enforcing the relief ordered" before fees can be awarded. § 803(d) (codified at 42 U.S.C.A. § 1997e(d)(1)). And finally, § 803(d) of the PLRA imposes a cap on the hourly rate available to a plaintiff's counsel of 150 percent of the hourly rate available to court-appointed counsel. See § 803(d) (codified at 42 U.S.C.A. § 1997e(d)(3)). Therefore, the district court must compute the maximum hourly rate allowable and determine whether a plaintiff's counsel is entitled to the maximum rate or a reduced amount.**14**

_____

**14** The district court ruled that if it had applied the fee limitations of § 803(d), it would have awarded counsel for Plaintiffs the maximum hourly rate available. We express no opinion as to the appropriateness of such an award. The district court may, of course, reconsider the award on remand.

27

1.

The State challenges the district court's finding that Plaintiffs were eligible for fees pursuant to 42 U.S.C.A. § 1988 on two grounds. First, the State contends that the district court erred when it awarded Plaintiffs attorney's fees for work relating to the December modification hearing because, they argue, Plaintiffs were not the "prevailing party" in that proceeding. Second, the State argues that the district court abused its discretion when it failed to expressly consider all the Barber factors when evaluating the "reasonableness" of Plaintiffs' fee requests. We address the State's arguments in turn.

a.

The State argues that Plaintiffs failed to prove their initial eligibility for fees under 42 U.S.C.A. § 1988 for work relating to the December staffing hearing and modification motion. The State contests Plaintiffs' status as prevailing party in the resulting February order because (1) the order was only an "interim," rather than a final order, and (2) the State consented to the revised plan, rendering the Plaintiffs' motion nothing more than a "catalyst" for the modification. We disagree and hold that the district court properly determined that Plaintiffs were the "prevailing party" in the February order and, therefore, were eligible for fees under 42 U.S.C.A. § 1988.

Part of the remedial plan initially proposed by the State included an increase in the number of security staff to provide minimal levels of physical safety for the juveniles housed in the State's juvenile facilities. The proposed plan, in addition to increasing staff, included a population reduction of 100 juveniles by July 15, 1996, and 200 juveniles by July 15, 1997. During the June 1994 trial, the juvenile population ranged from 670 to 730 at institutions that had a rated capacity of 299. By July 13, 1995, however, the juvenile population had risen to 851, rather than declining. As a result, Plaintiffs moved for emergency relief, requesting additional staffing. Also, at the August 1995 status conference, the special master appointed to monitor the State's compliance with the plan lamented that the facilities remained unsafe and that an emergency situation existed.

In response, the State asked the district court to grant it time to implement the original remedial plan. The State also argued that there

28

had been no change in circumstances warranting the relief sought by Plaintiffs. Plaintiffs nevertheless moved for a modification of the remedial plan based on the unexpected increase in the juvenile population. Plaintiffs argued that the modification was necessary because the State's original plan was predicated upon a reduction in population.

During the subsequent three-day hearing in December 1995, Plaintiffs presented testimony from several juvenile witnesses, Department of Juvenile Justice employees, and two experts. At the time of the hearing, the juvenile population had increased to approximately 1000. Nevertheless, at the beginning of the hearing the State maintained there had been no change in conditions at the juvenile facilities and that the modifications requested by Plaintiffs were premature and unnecessary. However, at the completion of Plaintiffs' case, the State conceded the need for additional security staffing and proposed its revised remedial plan. The State also conceded that it had begun increasing personnel shortly before the December hearing, and that it planned additional increases due to the rise in the juvenile population.

The district court issued an order on February 16, 1996, requiring the State to increase staffing to "<u>at least</u> that level of staffing set forth in [the State's revised] plan." (J.A. at 24.) The court further found that the order was "only interim and [was] subject to further modification after an appropriate amount of time has passed to allow evaluation of [the State's] modified staffing plan." (J.A. at 24.) The district court specifically concluded that Plaintiffs were the prevailing party in the December action and provided for the submission of affidavits for an award of attorney's fees for the staffing issue and monitoring activities since the January 1995 order.

The State contends that Plaintiffs were not a prevailing party, but merely a catalyst which encouraged the State to adopt an increased staffing plan. This Court has clearly rejected the "catalyst theory" as a means of acquiring prevailing party status for the purposes of 42 U.S.C.A. § 1988. <u>See Arvinger v. Mayor and City Council of Baltimore</u>, 31 F.3d 196, 198 (4th Cir. 1994) (citing <u>S-1 & S-2 v. State Bd. of Ed.</u>, 21 F.3d 49, 51 (4th Cir. 1994) (en banc)). To acquire prevailing party status, Plaintiffs must "succeed on[a] significant issue in litigation which achieves some of the benefit the parties sought in

29

bringing the suit." Arvinger, 31 F.3d at 200 (quotation omitted). Moreover, "[t]he plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." Farrar, 506 U.S. at 111. "In short, a plaintiff `prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Id. at 111-12. The February 16 order was an enforceable order against the State requiring it to increase security staffing levels at the juvenile facilities pursuant to a modified plan. Thus, it materially altered the "legal relationship" between Plaintiffs and the State. See id. at 113 ("No material alteration of the legal relationship between the parties occurs until the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant.").

Under these circumstances, the fact that the new plan was "voluntarily" proposed by the State rather than the court is irrelevant. Plaintiffs moved for a modification of the State's original remedial plan. The State opposed Plaintiffs' motions, arguing that their original plan should be given time to work. It was not until the conclusion of Plaintiffs' presentation at the December hearing, during which the State attempted to discredit many of Plaintiffs' witnesses, that the State conceded that increased staffing was necessary to protect the juveniles housed in the State's juvenile facilities. Furthermore, while the State implemented some of the ordered changes prior to the hearing, many were not instituted until afterwards, in accordance with the district court's order. As a result of Plaintiffs' motions and the subsequent hearing, the district court ordered the State to modify its original remedial plan to provide for increased staffing at the levels proposed by the State during the hearing. This order memorialized the "resolution of [a] dispute which change[d] the legal relationship between [the State] and [Plaintiffs]." Farrar, 516 U.S. at 111. Accordingly, the district court did not err in concluding that Plaintiffs were the prevailing parties in the December modification hearing. See S-1 and S-2 v. State Bd. of Ed., 6 F.3d 160, 171 (4th Cir. 1993) (Wilkinson, C.J., dissenting) ("[A] voluntary change in conduct[,] formalized in a legally enforceable settlement agreement[, will] transform a plaintiff into a prevailing party for purposes of § 1988."), adopted as majority opinion, 21 F.3d 49, 51 (4th Cir. 1994) (en banc).

30

b.

The State also challenges the awards of attorney's fees in the February 16, May 29, and August 30, orders, arguing that the district court abused its discretion when it failed to expressly consider all the factors articulated in Barber v. Kimbrell's Inc., 577 F.2d 216 (4th Cir. 1978). "It is well settled that district courts have considerable discretion in awarding attorneys' fees, and we must not overturn an award by the district court unless it is clearly wrong." Colonial Williamsburg Foundation v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994) (citation omitted).

We have enunciated twelve factors that the district court must consider when determining the reasonableness of an attorney fee request. See Barber, 577 F.2d at 226 n.28.[15] We have also held that any award of attorney's fees must be accompanied by detailed findings of fact with regard to the factors. See id. at 226. With that having been said, we conclude that the State forfeited any error made by the district court in failing to expressly address the Barber factors in each of the appealed orders. In its February 16 order, the district court set forth its "Fee application procedures" for counsel. It instructed both parties as follows:

_____

**15** The Barber factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)).

31

> The court will not require plaintiffs to file affidavits which duplicate the general attorney background information and billing rates filed in support of the prior fee application except as to any new attorneys or attorneys for whom plaintiffs are now claiming a different billing rate. The court will rely on the affidavits previously filed in this matter absent specific objection from defendants.

(J.A. at 30 (emphasis added).)**16** The district court further provided that after Plaintiffs' counsel submitted fee affidavits, the State had ten days to "draw the court's attention to any perceived inadequacies in the form of Plaintiffs' fee submission to the court." (J.A. at 30.) Plaintiffs then had an opportunity to respond, after which the State had fifteen additional days to object to the submission of fees. The State, however, neither objected to the fees on the basis of any of the Barber factors nor objected to the district court's failure to expressly address the Barber factors.

Nevertheless, we may correct a forfeited error. See United States v. Olano, 113 S. Ct. 1770, 1777 (1993). A review of the record, however, reveals that the district court did not err. To the contrary, there is ample evidence demonstrating that the district court carefully reviewed the fee applications and determined their reasonableness. As noted, the district court set forth a specific procedure for attorney's fee applications such that the State had ample opportunity to object to any submissions by the Plaintiffs. The State made several objections to the fee applications, including general claims of overbilling, billing time for secretarial services, and billing for multiple people unnecessarily attending the same proceedings. The district court examined the objections and, agreeing with the State in part, reduced one fee award by $6,500 (J.A. at 62), and another by $800 (J.A. at 66).**17** These reductions are strong evidence that the district court,

---

**16** We note that the district court had dealt with the issue of attorney's fees awards in the underlying case since the submission of the first motion for attorney's fees by Plaintiffs on April 24, 1992. As a result, the district court and the parties were intimately familiar with the necessary background information used to evaluate each attorney and the type of work involved in this case.

**17** Also, Plaintiffs voluntarily reduced fees by $8,143 in response to the State's objections. (J.A. at 59.)

32

while not specifically addressing each <u>Barber</u> factor, carefully considered each fee application. <u>See Colonial Williamsburg</u>, 38 F.3d at 138 (holding that the district court's disallowance of all requested fees was evidence of adequate review of petition for attorney's fees, despite the court's failure to address all <u>Barber</u> factors). Accordingly, we cannot say that the district court abused its discretion by not addressing each of the <u>Barber</u> factors, and we affirm the district court's determination that the fees awarded were "reasonable" under 42 U.S.C.A. § 1988.**18**

2.

Although we conclude that the district court properly found that Plaintiffs were entitled to fees for the work performed relating to the December motion and that the fee affidavits submitted were not unreasonable under 42 U.S.C.A. § 1988, the district court erred when it found that the PLRA's attorney's fees limitations were inapplicable to this case. The PLRA requires Plaintiffs to prove that the fees requested were "directly and reasonably incurred in proving an actual violation of the plaintiff[s'] right[s or] in enforcing the relief ordered for the violation." § 803(d)(codified at 42 U.S.C.A. § 1997e(d)(1)). This Court, of course, expresses no opinion as to whether Plaintiffs have met the above requirements. However, if upon reconsideration, the district court determines that Plaintiffs have satisfied the criteria set forth in § 1997e(d)(1) for entitlement to attorney's fees, we instruct the district court to recompute its fee award in light of the hourly cap imposed by § 803(d). Again, we express no opinion as to whether Plaintiffs' counsel should be compensated at the maximum rate allowable or a reduced rate. These determinations are left to the discretion of the district court.

---

**18** In concluding that the district court carefully considered all the pertinent factors when determining the reasonableness of the fees awarded pursuant to 42 U.S.C.A. § 1988, we further rely on our affirmance of an earlier district court order awarding attorney's fees in this case. In <u>Alexander S. ex rel. Bowers v. Boyd</u>, 89 F.3d 827 (4th Cir. 1996) (unpublished), we rejected the State's same argument that the district court failed to adequately address all the <u>Barber</u> factors and affirmed the award which was based, in part, on the same general attorney background information and billing rates relied upon by the district court in these appealed orders.

IV.

In conclusion, we reverse the district court's holding that the attorney's fees limitations set forth in § 803(d) of the PLRA (codified at 42 U.S.C.A. § 1997e(d)) are limited to prisoners confined to adult facilities. Rather, we conclude that § 803(d)'s attorney's fee limitations apply to any action brought by an incarcerated juvenile challenging the constitutionality of his conditions of confinement pursuant to 42 U.S.C.A. § 1983 or any other Federal law in which the attorney's fee is awarded subsequent to the enactment of the PLRA. We find no evidence in the express language of the PLRA or its legislative history to indicate that Congress intended to exclude juveniles confined in juvenile facilities from the far-reaching effects of the PLRA. To the contrary, an examination of the entire Act reveals a concerted effort to include juveniles within the scope of the PLRA.

We affirm the district court's conclusion that Plaintiffs are eligible for attorney's fees under 42 U.S.C.A. § 1988. However, we remand the appealed orders and direct the district court to apply the attorney's fees limitations of the PLRA when determining the amount of, and Plaintiffs' entitlement to, attorney's fees.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

DIANA GRIBBON MOTZ, Circuit Judge, Concurring in Parts, I., II., III.A. and C., IV., and in the judgment:

Section III.B. of Judge Williams' opinion applies the Supreme Court's Landgraf analysis to determine whether 42 U.S.C.A. § 1977e(d)(3) (West Supp. 1997) has a "retroactive effect." I write separately to state why I believe that application of § 1997e(d)(3) to the fees at issue here presents no retroactivity question.

Section 1997e(d)(3) provides that attorney's fees under 42 U.S.C. § 1988 "shall not be awarded, except to the extent that" the hourly rate is capped at "150 percent of the hourly rate established under section 3006A of Title 18." (emphasis added). The plain language of the statute directs that it applies when a court makes its award, not when an attorney completes his work, or totals his time, or submits his fee

34

request, but when a court awards fees. Therefore, the only "retroactivity" question involving § 1997e(d)(3) is whether it applies to fees awarded before its enactment. Because the fees at issue here were awarded on May 29, 1996, a month after the effective date of the statute (April 26, 1996) this case presents no retroactivity question.

I cannot accept Judge Murnaghan's suggestion that the district court awarded fees on February 16, 1996. The district court's February 16 order declared plaintiffs entitled to fees; it awarded them nothing. Even after a victory on the merits or a declaration of entitlement to fees an attorney has no right to a specific fee under § 1988 until the actual fees are awarded. A district court must apply a twelve factor test, and can always grant an attorney less than he requests. In short, because § 1997e(d)(3) only affects the rate at which attorneys are compensated it has no "retroactive effect" on their entitlement to some fees -- it does not "impair rights a party possessed when he acted." Landgraf v. USI Film Prods., 511 U.S. 244, 114 S.Ct. 1483, 1505 (1994).* For this reason, the Landgraf analysis, which bedevils my colleagues, is unnecessary here.

I note that, if Landgraf did apply, its initial step would resolve this case. That step requires determination of whether "Congress has expressly prescribed the statute's proper reach." Id. at 280. If so, "there is no need to resort to judicial default rules." Id. By expressly stating that § 1997e(d)(3) applies to an "award" of fees Congress clearly evidenced its intent to affect a fee "award" regardless of when legal work was completed. To hold otherwise would require us to add the following clause to § 1997e(d)(3): "such fees shall not be awarded [for work completed after the passage of this Act]."

_____

* I recognize that Jensen v. Clarke, 94 F.3d 1191 (8th Cir. 1996), and Cooper v. Casey, 97 F.3d 914, 921 (7th Cir. 1996), found that it would be "`manifestly unjust' to upset [an attorney's] reasonable expectations and impose new guidelines at this late date." Jensen, 94 F.3d at 1203; see also Cooper, 97 F.3d at 921. But regardless of the statute's "fairness" it only changes the rate of renumeration, it does not strip an attorney of any previously established right to a specific award of attorney's fees, because there is no such right until the court awards the fees.

MURNAGHAN, Circuit Judge dissenting:

Because I would follow the Seventh and Eighth Circuits and find that the attorney's fee provision in 42 U.S.C.A. § 1997e does not apply retroactively, I dissent as to part III.B.2.

Section 803(d) of the PLRA provides that in cases such as the case at bar, "[n]o award of attorney's fees" shall be awarded greater than 150% of the local hourly rate for court-appointed counsel.[1] Since the PLRA was passed on April 26, 1996, the Court must determine whether the fee-limiting provisions in the PLRA apply retroactively to work done before the passage of the act.

In Landgraf v. USI Film Products, 114 S. Ct. 1483 (1994), the Court set out the procedures for determining whether a statute should apply retroactively. First, the court should determine whether "Congress has expressly prescribed the statute's proper reach." Id. at 1505. If Congress has not done so, "the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. If the statute has language indicating possible retroactive effect, the presumption against retroactivity prevails unless there is "clear congressional intent favoring such a result." Id. If the statute does not indicate retroactive effect, then the court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice." Bradley v. School Board of Richmond, 416 U.S. 696, 711 (1974).

Nothing in the section 803(d) "expressly prescribed [its] proper reach." (emphasis added). The Majority argues that the language "no award of attorney's fees" expressly prescribes the statute's reach in that it indicates that the statute applies when fees are awarded. However, such language certainly does not "expressly" indicate that the

---

[1] As the majority points out, plaintiffs do not dispute that the rate under the PLRA is $112.50. Although the state does not concede that plaintiff's counsel's hourly rate should be set at $112.50, the district court specifically stated that if the PLRA applied it would set counsel's fees at the maximum amount.

36

Congress intended § 803(d) to apply retroactively. <u>See also Leland v.</u> <u>Federal Ins. Adm'r</u>, 934 F.2d 524, 528 (4th Cir. 1991) ("[E]ven where some substantial justification for retroactivity is presented, courts should be reluctant to find such authority absent an express statutory grant.")

In fact, there is evidence that Congress intended that § 803(d) should apply prospectively. Section 802 of the PLRA specifically provides that § 802 applies to relief "granted or approved before, on, or after the date of enactment of this title." Section 803, however, is silent in that regard. Although the fact that Congress expressly indicated that § 802 applies retroactively and did not do so for § 803 may not "expressly" indicate that the Congress intended § 803(d) to apply retroactively, it does, however, indicate that when Congress chooses to expressly indicate that a provision is retroactive it can clearly do so.

Secondly, a plain reading of the statutory language in the instant case does not weigh in favor of retroactivity. Based on the Majority's argument, the statute applies on the date attorney's fees were awarded. Thus, if attorney's fees are awarded after the date of the PLRA, the PLRA applies even if the work was done prior to the enactment of the PLRA. It concludes that attorney's fees were awarded after the date of passage of the PLRA and therefore the PLRA applies. However, under the facts in the instant case, attorney's fees were awarded well before the passage of the PLRA.[2]

As the Majority concedes, the Appellees were awarded fees for monitoring activities. In its February 16th order, the district court set up specific instructions regarding how the fees would be paid. Moreover, there was no question that the February 16th order granted attorney's fees to the parties for monitoring activities, the only questions were at what rate and for how many hours. Therefore, the "award" of

_____

[2] The fees were not "ordered" until after the passage of the PLRA. In addition, the court's August 30, 1996 order referenced and incorporated the previous order. The specific fee amount in the August 30th order dated back to the February 16th award and amounted to a <u>nunc pro tunc</u> award. The fact that the specific fee calculation was made after the award does not mean that the award itself was not made on an earlier date.

37

attorney's fees occurred on February 16, 1996 when the court set out its instructions regarding how further fees would be paid. These fees were not "ordered" until after the passage of the PLRA, but they were "awarded."**3**

Even if this reading of the statute is inaccurate, it certainly indicates that the statement "award of attorney's fees" is insufficient to establish that Congress clearly proscribed the reach of the statute. Since Congress did not expressly prescribe the reach of § 803, the Court must determine whether the statute would have retroactive effect. Landgraf, 114 S. Ct. at 1505.

In the instant case, plaintiffs' attorneys had a legitimate expectation that they would receive payment for services rendered. The district court awarded such payment in its February 16 order. The court clearly set out procedures, which, if followed by the plaintiffs' attorneys, would entitle plaintiffs' attorneys to receive compensation at the prevailing rate. Plaintiffs' attorneys continued their monitoring activities based on such an understanding. Thus, the statute would certainly have retroactive effect.

The Seventh and Eighth Circuits have reached similar results. In Jensen v. Clarke, 94 F.3d 1191, 1202 (8th Cir. 1996), the court determined that applying 803(d) retroactively would "have the retroactive effect of disappointing reasonable reliance on prior law." In addition, the court further stated that "when the attorneys were exerting what the District Court quite fairly described as herculean efforts on [plaintiffs'] behalf, they expected to have their fee determined under Section 1988. If we apply the Act, those expectations will be foiled." Id. at 1202 (internal quotations omitted); see also Cooper v. Casey, 97 F.3d 914, 921 (7th Cir. 1996) (to apply the statute retroactively would "attach (without clear indication of congressional intent to do so) new legal consequences to completed conduct, mainly the services rendered by the plaintiffs' counsel in advance of the passage of the new Act."). I agree with the Seventh and Eighth Circuits and believe that applying the Act retroactively would have retroactive effect.

_____

**3** In its February 16, 1996 order, the district court stated: "The court further finds that plaintiffs are entitled to fees . . . related to monitoring activities." J.A. at 31. In my view, this is an award of attorney's fees.

38

The Majority argues, based on Bradley, 416 U.S. at 696, that changes regarding fee determinations do not have retroactive effect. In Bradley, the Supreme Court determined that a statute allowing courts to award fees to prevailing parties in school desegregation cases could be applied retroactively. Id. at 723-724. However, the Court based this decision on the fact that applying the statute retroactively would not have changed the liabilities of the parties or the parties' expectations. Id. at 721. The Court determined that since the district court had already awarded fees based on common law principles, applying the fee determination retroactively did not upset the parties' expectations and did not create an "unforeseeable obligation." Id.

However, in the case at bar, the parties' expectations, pursuant to the February order, were that they would be paid the prevailing rate for attorney's fees. Since the parties had previously been awarded fees, the rate for such fees was already set by the court. The district court's order recognized this and did not require plaintiff's attorneys to refile affidavits regarding fees. Therefore, unlike in Bradley, the attorneys in the instant case had an expectation that they would be paid. Reducing these fees would place an "unforeseeable obligation" on plaintiff's attorneys because, after services had been provided, they would be required to provide those services at a reduced rate.

Since Congress did not expressly provide that § 803(d) applied retroactively and since applying the statute retroactively would have retroactive effect, the traditional presumption against retroactivity should apply. However, even if the statute does not have retroactive effect, the statute should not be applied retroactively because doing so would result in "manifest injustice." Id. at 711.

In Bradley, the Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in `manifest injustice' or there is statutory direction or legislative history to the contrary." Id. Applying this statute retroactively would clearly result in "manifest injustice."

The parties in the instant case have been embroiled in litigation for several years. Plaintiffs have sought and been awarded fees on several occasions. In addition, plaintiffs' attorneys were involved in contin-

39

ued monitoring activities. Holding § 803(d) retroactive and applying a reduced rate for attorney's fees for work already done will certainly create a manifest injustice on the parties. See Jensen, 94 F.3d at 1203 ("It would be `manifestly unjust' to upset those reasonable expectations and impose new guidelines at this late date."); Weaver v. Clarke, 933 F. Supp. 831, 835 (D. Neb. 1996) ("[R]etroactive imposition of the section of the PLRA . . . would cause `manifest injustice' to lawyers like Plaintiff's counsel who have performed their ethical obligations to the courts upon settled expectations premised upon precedent that if they `prevailed' they would be compensated.")

Moreover, Bradley also held that a statute should not be applied retroactively if "there is statutory direction or legislative history to the contrary." Bradley, 416 U.S. at 711. Although there is no language which "expressly" applies the statute retroactively or prospectively, there is evidence that Congress did not intend for § 803(d) to apply retroactively. When Congress passed the PLRA it expressly made § 802 applicable to relief granted before the passage of the Act. § 802(b)(1). However, § 803(b) is silent as to its application. Since Congress saw fit to clarify that § 802(b) applied retroactively, it can be inferred that the exclusion of such clarifying language in § 803 indicates that Congress did not intend § 803 to apply retroactively.**4** See Jensen, 94 F.3d at 1203.

Since I believe that § 803(d) does not apply to work completed before the passage of the PLRA, and because I believe it is manifestly unjust to apply § 803(d) retroactively in the instant case, I dissent as to part III.B.2.

_____

**4** I concede that this does not express clear intent; however, it does indicate that there is "statutory or legislative history to the contrary" regarding retroactivity. Bradley, 416 U.S. at 711.

Furthermore, the Majority indicates that one of the major purposes of the Act was to stem frivolous law suits. Applying the statute retroactively in no way furthers this goal. In fact, in the instant case, it is clear that the lawsuit was not frivolous in that plaintiffs were determined to be the prevailing parties. Obviously their suit could not have been frivolous if they prevailed in their action.