31 F.3d 196
 65 Fair Empl.Prac.Cas. (BNA) 1501, 93 Ed. Law
Rep. 504
 Stephen A. ARVINGER, Plaintiff-Appellee,
v.
MAYOR AND CITY COUNCIL OF BALTIMORE; Larry Burgan,
Defendants-Appellants,
and
Baltimore City Department of Education; Baltimore City
Police Department; Ronald Daniel, Defendants.
 No. 93-2204.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 13, 1994.
Decided Aug. 1, 1994.
 
 ARGUED: Burton Harry Levin, Asst. City Sol., Baltimore, MD, for appellants. Kathleen M. Cahill, Baltimore, MD, for appellee. ON BRIEF: Neal M. Janey, City Sol., Baltimore, MD, for appellants. Lisa J. Sansone, Baltimore, MD, for appellee.
 Before NIEMEYER, Circuit Judge, SPROUSE, Senior Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 Reversed by published opinion, Judge NIEMEYER wrote the opinion, in which Senior Judge SPROUSE joined and Judge RESTANI joined in part. Judge RESTANI wrote a separate concurring opinion.
 OPINION
 NIEMEYER, Circuit Judge:
 
 
 1
 After Stephen A. Arvinger filed this action alleging that the City of Baltimore breached a settlement agreement that resolved a prior civil rights suit, the City voluntarily afforded Arvinger some of the relief requested in his complaint. Arvinger nevertheless prosecuted this action to judgment and was denied all relief by the district court. Following the entry of judgment, Arvinger presented an application to the district court for attorneys fees under 42 U.S.C. Sec. 1988, contending that he was a "prevailing party" entitled to fees because (1) this action was necessary "to preserve the fruits" of the prior civil rights action in which he was indisputably a prevailing party, and therefore his status as a prevailing party in the first suit should carry over to this suit; or (2) this action was a "catalyst" for the City's voluntary decision to afford him relief. The district court agreed with both theories and awarded Arvinger $13,354 in attorneys fees and costs.
 
 
 2
 On appeal, the City of Baltimore contends that because the settlement agreement did not entitle Arvinger to the relief voluntarily afforded, this suit was not necessary to "preserve the fruits" of that suit, and Arvinger was not entitled to fees. It also contends that the catalyst theory cannot, under Fourth Circuit precedent, afford a basis for attorneys fees, particularly in light of our recent decision in S-1 & S-2 v. State Board of Education, 21 F.3d 49 (4th Cir.1994) (en banc). We agree with the position advanced by the City of Baltimore, and for the reasons that follow, we reverse.
 
 
 3
 * Prior to his discharge in December 1984, Stephen Arvinger served as a commissioned police officer for the Baltimore Department of Education. He was discharged by the Department of Education for lying during an investigation into the ownership of marijuana that was found in his van on July 14, 1983. Arvinger filed a civil rights action under 42 U.S.C. Sec. 1983, contending that various statements he made in connection with the investigation were protected by the First Amendment, and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-3(a), contending that his discharge was retaliatory. Following a trial and two appeals in which we ultimately concluded that a Title VII violation had been shown but that a Sec. 1983 violation had not, see Arvinger v. Mayor and City Council of Baltimore, 862 F.2d 75 (4th Cir.1988), and Arvinger v. Mayor and City Council of Baltimore, No. 88-2203, 1990 WL 2198 (4th Cir. Jan. 12, 1990), the parties entered into a settlement agreement to resolve the case. The agreement provided for Arvinger's reinstatement as a security officer, with back pay. The agreement also recognized that Arvinger would have to apply to the Police Commissioner to be recommissioned. The reinstatement provision stated, "It is agreed that until Arvinger is recommissioned, he will be reassigned to a school along with another security officer." This limitation was necessary because only a commissioned officer has the power to arrest. The agreement, however, did not assure that Arvinger would be recommissioned, providing only that the Department of Education would cooperate to assist Arvinger in seeking recommissioning:
 
 
 4
 Arvinger shall immediately apply to the Baltimore City Police Commissioner for recommissioning, and promptly and diligently pursue all requirements for recommissioning. [The Department of Education] shall cooperate fully with the Baltimore City Police Commissioner and take all reasonable and necessary measures to assist Arvinger in accomplishing recommissioning, including but not limited to recommending Arvinger for recommissioning. Baltimore shall further ensure that there will be no reference in the course of the recommissioning process to the fact that Arvinger was discharged by Baltimore in December 1984, unless absolutely necessary, and if such reference must be made, that it include a statement that the discharge of Arvinger in December 1984 was found by the United States Court of Appeals for the Fourth Circuit to have been in violation of Title VII, and that Baltimore has been required, pursuant to Title VII, to reinstate Arvinger.
 
 
 5
 After Arvinger was reinstated, he prepared his application for recommissioning, had the Department of Education's police chief sign it to indicate his recommendation for recommissioning, and forwarded the application to the Police Commissioner for action. Under standard procedures for processing the application, the Commissioner's office gathered information concerning Arvinger's criminal history and discovered that his record contained three arrests, one in 1977 for failure to appear in housing court, one in 1983 for possession of marijuana, and one in 1988 for assault. Seeking an explanation from Arvinger for these arrests, the Commissioner's office obtained statements from Arvinger in which he indicated that he had been arrested for "possession of marijuana found in a passenger's pocketbook" in his van but that the charge had been dismissed and had not been the basis for his earlier termination. He also pointed out that the federal courts had concluded that he had been wrongfully terminated and had ordered his reinstatement. On the assault arrest, Arvinger stated that he had been "cleared in district court" of the charge.
 
 
 6
 Further investigation into these incidents by Officer Mark Howe of the Commissioner's office revealed that Arvinger's statements were misleading. For one, the police report on the marijuana arrest indicated that the marijuana was found not in a pocketbook, but in plain view of the arresting officers on the front console of the van, and Howe confirmed this with one of the police officers. In addition, Howe learned that Arvinger had received probation before judgment in connection with the assault charge, meaning that he had not been "cleared" of the charge. Based upon his investigation, Officer Howe concluded that Arvinger had lied in his statements about the location of the marijuana and about his arrest record, and he recommended that Arvinger not be commissioned. Adopting Howe's recommendation, the Police Commissioner refused to recommission Arvinger. Arvinger remained employed by the Department of Education, however, performing duties of a school police officer, but without the power to arrest.
 
 
 7
 Because Arvinger was denied a commission, he filed this action under various civil rights laws and state common law, including breach of contract, naming as defendants the City of Baltimore and the various departments and persons involved in the denial of his application for a commission. Arvinger asserted that the Department of Education's failure to obtain the commission for him and its "communication of false and derogatory information" about him constituted "a breach of the Settlement Agreement, as well as retaliation based on plaintiff's assertion of his rights under federal statute and the Constitution of the United States."
 
 
 8
 In an effort to bring the case to a close, Baltimore City officials convinced the Police Commissioner on June 7, 1991, to grant Arvinger his commission. The Commissioner honored the request mainly because a new law was to take effect on July 1, 1991, under which the commissioning authority would be shifted from the Police Commissioner to the chief of school security, who is a member of the Department of Education. Thus, after July 1, 1991, the defendants in the original action would be empowered to commission Arvinger themselves.
 
 
 9
 Notwithstanding the receipt of his commission, Arvinger continued to pursue his lawsuit, alleging that he was still entitled to lost overtime pay he would have received had he been recommissioned, compensation for emotional distress, and attorneys fees. The district court dismissed a number of Arvinger's claims on summary judgment and proceeded to trial on the retaliation and breach of contract claims. Following trial, the district court concluded that Baltimore City's efforts to obtain Arvinger's commission were sufficient to fulfill its obligations under the settlement agreement and that the City took no retaliatory action against Arvinger in violation of Title VII. The court interpreted the defendants' obligations under the settlement agreement as requiring only that the Department of Education use its best efforts to obtain Arvinger's commission, not that it actually obtain it for him. The district court thus entered judgment for the defendants on all claims.
 
 
 10
 After entry of judgment on the merits, Arvinger filed a motion for attorneys fees under 42 U.S.C. Sec. 1988. Relying on Plyler v. Evatt, 902 F.2d 273 (4th Cir.1990), Arvinger argued that this lawsuit was "necessary to preserve the fruits" of his earlier civil rights action and that he should be seen as a "prevailing party" in the second action because he had "no choice" but to file it. Alternatively, he argued that this action was a "catalyst" for the City's decision to recommission him. Apparently accepting both theories, the district court awarded Arvinger $13,354, representing fees for legal services from the time of the denial of his recommission until he received it.
 
 
 11
 Arvinger did not appeal the district court's judgment on the merits, and this appeal, taken by Baltimore City, addresses only Arvinger's award of attorneys fees.
 
 II
 
 12
 To recover attorneys fees under the civil rights laws involved here,* the petitioner must be a "prevailing party." Attorneys fees petitioners are considered "prevailing parties" if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley, 461 U.S. at 433, 103 S.Ct. at 1939. "The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement." Farrar v. Hobby, --- U.S. ----, ----, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992).
 
 
 13
 The single question presented to us in this case is whether Arvinger is a prevailing party in this litigation despite the fact that he obtained no relief from the court through a judgment, consent decree, or settlement. His claim to prevailing party status is made under two theories. He argues that (1) he was a prevailing party in the original litigation and that status carries over to this litigation since this litigation is "inextricably intermingled" with the first; or (2) because this litigation induced the defendants to recommission him, even though the recommissioning was a voluntary act not required by the settlement agreement, his suit was a "catalyst" for obtaining the relief he sought. These alternative theories will be addressed in order.
 
 III
 
 14
 All agree that Arvinger was the prevailing party in his initial civil rights action, having obtained reinstatement with back pay, and he received an award of attorneys fees in connection with that action. This second action was initiated when he concluded that the defendants failed to live up to the bargain he thought he had obtained in the first. This action is thus based on new facts that arose following his reinstatement, and it is based on different legal theories, essentially arising from alleged violations of the settlement agreement. In awarding fees, the district court concluded that since this action is "inextricably intermingled" with the first, Arvinger was entitled to the benefits of prevailing party status that he had obtained in the first litigation. In doing so, however, the court overlooked our holding in Willie M. v. Hunt, 732 F.2d 383 (4th Cir.1984), which we believe controls the disposition of this issue.
 
 
 15
 The first suit in Willie M. sought, on behalf of a class of emotionally disturbed children, appropriate treatment programs under the Education for All Handicapped Children Act and related laws. The action was settled favorably to the class with North Carolina's agreement to provide appropriate treatment and free education to a defined class of children, and this agreement was embodied in a consent decree. Consistent with the favorable outcome, counsel for the class were awarded attorneys fees and expenses.
 
 
 16
 As the settlement agreement in Willie M. became operative, however, two questions arose about the intended scope of the class of persons to which the settlement would apply. When the parties could not agree on a resolution of the questions, they presented them to the courts, and on both questions, the plaintiffs were ultimately unsuccessful. The plaintiffs nevertheless sought attorneys fees and expenses for the second litigation, arguing that their "prevailing party" status from the underlying lawsuit should carry over to the second lawsuit, despite the fact that they were unsuccessful on the two subsequently litigated questions.
 
 
 17
 Relying upon the reasoning of Hensley, we denied plaintiffs' fee petition. We noted that in Hensley, the Supreme Court had stated:
 
 
 18
 In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants--often an institution and its officers ...--counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
 
 
 19
 732 F.2d at 386 (quoting 461 U.S. at 434-35, 103 S.Ct. at 1940 (internal quotation and citation omitted)) (emphasis added). Although Hensley addressed a plaintiff's right to fees for work done on unsuccessful claims in an action in which the plaintiff prevailed on some claims, in Willie M. we adopted its reasoning for situations where a plaintiff seeks fees for unsuccessful claims presented after having prevailed in earlier but separate litigation. Observing that the second litigation turned on an interpretation of the consent judgment under principles of contract law, while the first turned on an interpretation of federal law on education for handicapped children, we held that the difference between the two issues was the determinative criterion for resolving the attorneys fee question:
 
 
 20
 We view the award in this case for litigation of the class definition questions to be for claims distinctly different from the underlying lawsuit and arising after the main civil rights issues were settled by agreement of the parties with judicial imprimatur. Here, "[t]he issue before the district court was the proper construction of a disputed provision in a consent judgment." ... [T]he interpretation of this consent judgment was akin to a question of contract interpretation....
 
 
 21
 732 F.2d at 386 (quoting Willie M. v. Hunt, 657 F.2d 55, 59 (4th Cir.1981)) (emphasis added). Accordingly, we concluded that counsel for the class were not entitled to an attorneys fee award for litigating the class definition questions, even though the issues arose directly from the settlement in the previous case.
 
 
 22
 In this case, as in Willie M., the first case ended in a settlement, and the second case was pursued to interpret and enforce the settlement agreement. Whereas the first case turned on the reasons for Arvinger's discharge and applied the civil rights laws to that factual circumstance, the second turned on the proper interpretation of the settlement agreement and a claim of retaliation in connection with its alleged breach. The claims in the two cases are distinctly different in the same manner as they were in Willie M., and, therefore, when Arvinger was unsuccessful on the claims of the second action, he was not a prevailing party for purposes of attorneys fees provisions. See Willie M., 732 F.2d at 386-87.
 
 
 23
 To avoid this result, Arvinger cites us to our decision in Plyler v. Evatt, 902 F.2d 273 (4th Cir.1990). In Plyler, the plaintiffs sued the South Carolina Department of Corrections, complaining of overcrowded conditions in state prisons. Following a settlement agreement between the parties, the district court issued a consent decree covering virtually all aspects of prison life, including when "double-celling" of prisoners would be permitted. Part of the decree also mandated that plaintiffs' counsel would be entitled to attorneys fees.
 
 
 24
 Sometime after the entry of the consent decree, South Carolina filed a motion to modify the decree to allow double-celling in some facilities to accommodate an increase in prison population. We concluded that the decree should be so modified and thus ruled against the plaintiffs in the subsequent litigation. We nevertheless awarded plaintiffs their attorneys fees, concluding that the second litigation, insofar as it sought to modify the consent decree, was really a "replay" of the first. Unlike the situations in Willie M. and Hensley, where the unsuccessful efforts centered on interpretation of the consent decree or settlement, the subsequent litigation in Plyler revisited the merits of the first, applying the same substantive standards of the Eighth Amendment that were applied in the first. We noted that not only was this second litigation "inextricably intermingled" with the original, but that plaintiffs also had no choice but to litigate the modification, since it was the state, not the plaintiffs, which sought the modification.
 
 
 25
 Thus, when subsequent litigation seeks to enforce or interpret a settlement agreement or consent decree, involving facts and principles different from those considered in the underlying litigation, the second is not considered "inextricably intermingled" with the first. On the other hand, a subsequent litigation initiated against the successful party to modify or "replay" the issues of the first litigation may be so intermingled. Plyler applies to carry forward prevailing party status only in this latter circumstance, and only then when the plaintiffs are forced to litigate to preserve the relief originally obtained.
 
 
 26
 It is this distinction between Willie M. and Plyler which provides the basis for our ruling here that Arvinger is not entitled to fees for his unsuccessful suit to enforce the settlement agreement. Arvinger's legal efforts to enforce the agreement turned entirely upon his incorrect interpretation of the agreement and of the City's compliance with it. The district court was in no way required to address the merits of Arvinger's underlying claim. Even though the parties to the second litigation were largely the same as the parties to the first, the operative facts and legal theories were distinctly different. Thus, Arvinger cannot carry forward his prevailing party status from the first litigation to the second.
 
 IV
 
 27
 Arvinger's second theory for obtaining attorneys fees is that, even though he obtained no judgment, consent decree, or settlement in his favor in this litigation, he is a prevailing party because this litigation was a "catalyst" to his having obtained his recommissioning.
 
 
 28
 In recognizing a catalyst theory for awarding attorneys fees, the district court had only the benefit of the principles articulated in Bonnes v. Long, 599 F.2d 1316 (4th Cir.1979), to guide it. In Bonnes, decided before the Supreme Court's decision in Farrar v. Hobby, --- U.S. ----, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), we stated that prevailing party status under 42 U.S.C. Sec. 1988 may be found if the outcome, "in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way." 599 F.2d at 1319. In Farrar, however, the Supreme Court explained that 42 U.S.C. Sec. 1988 permits an award of attorneys fees only when the plaintiff has obtained "an enforceable judgment ... or comparable relief through a consent decree or settlement." --- U.S. at ----, 113 S.Ct. at 573. "Only under these circumstances can civil rights litigation effect 'the material alteration of the legal relationship of the parties' and thereby transform the plaintiff into a prevailing party." Id. (quoting Texas State Teachers Ass'n v. Garland Independent School Dist., 489 U.S. 782, 792-93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)).
 
 
 29
 Moreover, after the district court ruled in this case, we decided S-1 & S-2 v. State Board of Education, 21 F.3d 49 (4th Cir.1994) (en banc) (adopting the dissenting opinion of Judge Wilkinson reported at 6 F.3d 160, 168-72 (4th Cir.1993)). In S-1 & S-2, we held that a catalyst theory was not appropriate in determining prevailing party status under 42 U.S.C. Sec. 1988, concluding that such a theory was precluded by Farrar. We also observed a number of problems with the theory, including its expansion of 42 U.S.C. Sec. 1988 to a broader class of circumstances than intended by Congress, its potential to engender confusion and unnecessary litigation, and the possibility that such a construction might discourage public officials from voluntarily curing problems for fear of incurring liability for attorneys fees. 6 F.3d at 171-72.
 
 
 30
 Accordingly, Arvinger's reliance on a catalyst theory to establish prevailing party status is foreclosed by our ruling in S-1 & S-2. Because neither theory relied upon by the district court to support the fee award was appropriate, the judgment must be
 
 
 31
 REVERSED.
 
 RESTANI, Judge, concurring:
 
 32
 I join in parts I, II, & III of the opinion and concur in part IV as S-1 & S-2 v. State Bd. of Educ., 21 F.3d 49 (4th Cir.1994) (en banc), controls. I cannot agree, however, that Farrar v. Hobby, --- U.S. ----, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), applies to a catalyst doctrine case. If this were an open question, I would take the position of the dissent in the en banc decision in S-1, for the reasons stated therein. 21 F.3d at 51; see also Baumgartner v. Harrisburg Hous. Auth., 21 F.3d 541, 546 (3d Cir.1994) ("The issue in Farrar ... did not concern the 'catalyst theory.' ").
 
 
 
 *
 Arvinger presented his petition for attorneys fees and expenses under 42 U.S.C. Sec. 1988, and the district court made its award under that provision. The City of Baltimore points out, however, that Arvinger's claim that he is a prevailing party could only be made under 42 U.S.C. Sec. 2000e-5(k) in connection with rights given by Title VII, 42 U.S.C. Sec. 2000e-3(a), and not by the statutes to which 42 U.S.C. Sec. 1988 applies. Therefore, according to the City, the award should be overturned
 We agree that Arvinger filed his attorneys fee petition under a provision not applicable here. He succeeded in the first litigation only under Title VII, and his allegation of retaliation in the present case was only made under Title VII. Section 2000e-5(k), and not Sec. 1988, of Title 42 would therefore be the applicable provision, if any, governing an award of attorneys fees. Arvinger responds that any error in bringing its petition under 42 U.S.C. Sec. 1988 is harmless because the standards to be applied for both Sec. 2000e-5(k) and Sec. 1988 are the same. See Hensley v. Eckerhart, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983). Because we reject Arvinger's claim that he is a prevailing party and because the question of whether Arvinger is a "prevailing party" under either statute is to be decided under substantially the same standard, see id., we need not decide whether a standard of harmless error is to be applied to Arvinger's reliance on the wrong statute, as Arvinger maintains.