Filed: November 20, 2000

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 99-1955(L)
(CA-98-43-2-BR)

William Bryant Perry, et al.,

Plaintiffs - Appellees,

versus

Gary O. Bartlett, etc., et al.,

Defendants - Appellants.

O R D E R

The court amends its opinion filed October 3, 2000, as follows:

On page 12, first paragraph, line 7 -- the reference to Section 14A is corrected to read "Section 12A."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

WILLIAM BRYANT PERRY; FARMERS
FOR FAIRNESS, INCORPORATED,
<u>Plaintiffs-Appellees,</u>

v.

GARY O. BARTLETT, in his official
capacity as Executive Director of the
State Board of Elections of the State
of North Carolina; LARRY LEAKE, in his
official capacity as Chairman of the
State Board of Elections; S. KATHERINE
BURNETTE, in her official capacity as a
Secretary of the State Board of
Elections; JUNE K. YOUNGBLOOD;

No. 99-1955

DOROTHY PRESSER, in her official
capacity as a Member of the State
Board of Elections; FAIGER M.
BLACKWELL, in his official capacity as
a Member of the State Board of
Elections; MICHAEL F. EASLEY, in his
official capacity as Attorney General
for the State of North Carolina; COLON
WILLOUGHBY, in his official capacity as
District Attorney for the 10th Judicial
District; WILLIAM H. ANDREWS, in his
official capacity as District Attorney
for the 4th Judicial District;

C. BRANSON VICKORY, III, in his
official capacity as District Attorney
for the 8th Judicial District,
<u>Defendants-Appellants,</u>
and

DONALD M. JACOBS,
<u>Defendant.</u>

WILLIAM BRYANT PERRY; FARMERS
FOR FAIRNESS, INCORPORATED,
<u>Plaintiffs-Appellees,</u>

v.

GARY O. BARTLETT, in his official
capacity as Executive Director of the
State Board of Elections of the State
of North Carolina; LARRY LEAKE, in his
official capacity as Chairman of the
State Board of Elections; S. KATHERINE
BURNETTE, in her official capacity as a
Secretary of the State Board of
Elections; JUNE K. YOUNGBLOOD;

DOROTHY PRESSER, in her official
capacity as a Member of the State
Board of Elections; FAIGER M.
BLACKWELL, in his official capacity as
a Member of the State Board of
Elections; MICHAEL F. EASLEY, in his
official capacity as Attorney General
for the State of North Carolina; COLON
WILLOUGHBY, in his official capacity as
District Attorney for the 10th Judicial
District; WILLIAM H. ANDREWS, in his
official capacity as District Attorney
for the 4th Judicial District;

No. 99-2127

2

C. BRANSON VICKORY, III, in his
official capacity as District Attorney
for the 8th Judicial District,
<u>Defendants-Appellants,</u>
and

DONALD M. JACOBS,
<u>Defendant.</u>

WILLIAM BRYANT PERRY; FARMERS
FOR FAIRNESS, INCORPORATED,
<u>Plaintiffs-Appellants,</u>

v.

GARY O. BARTLETT, in his official
capacity as Executive Director of the
State Board of Elections of the State
of North Carolina; LARRY LEAKE, in his
official capacity as Chairman of the
State Board of Elections; S. KATHERINE
BURNETTE, in her official capacity as a
Secretary of the State Board of
Elections; JUNE K. YOUNGBLOOD;

DOROTHY PRESSER, in her official
capacity as a Member of the State
Board of Elections; FAIGER M.
BLACKWELL, in his official capacity as
a Member of the State Board of
Elections; MICHAEL F. EASLEY, in his
official capacity as Attorney General
for the State of North Carolina; COLON
WILLOUGHBY, in his official capacity as
District Attorney for the 10th Judicial
District; WILLIAM H. ANDREWS, in his
official capacity as District Attorney
for the 4th Judicial District;

No. 99-2148

C. BRANSON VICKORY, III, in his
official capacity as District Attorney
for the 8th Judicial District,
<u>Defendants-Appellees,</u>
and

DONALD M. JACOBS,
<u>Defendant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
W. Earl Britt, Senior District Judge.
(CA-98-43-2-BR)

Argued: April 4, 2000

Decided: October 3, 2000

Before HAMILTON, Senior Circuit Judge, John C. GODBOLD,
Senior Circuit Judge of the United States Court of Appeals
for the Eleventh Circuit, sitting by designation, and
David A. FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published per curiam opinion.

_____

## COUNSEL

**ARGUED:** Susan Kelly Nichols, Special Deputy Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina, for Appellants. Heidi Karin Meyer, BOPP, COLESON &
BOSTROM, Terre Haute, Indiana, for Appellees. **ON BRIEF:**
Michael F. Easley, North Carolina Attorney General, Alexander McC.
Peters, Special Deputy Attorney General, James Peeler Smith, Special

Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. James Bopp, Jr., James R. Mason, III, BOPP, COLESON & BOSTROM, Terre Haute, Indiana, for Appellees.

_____

## OPINION

PER CURIAM:

Appellees Farmers for Fairness, Inc. and William Bryant Perry (collectively "Farmers"), filed suit in federal court challenging certain provisions of the North Carolina election and campaign finance law and seeking declaratory and injunctive relief. Although determining that the question of the constitutionality of N.C. Gen. Stat. § 163-278.12A was moot following this court's decision in North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705 (4th Cir. 1999), the district court nevertheless enjoined the State of North Carolina from enforcing the statute against plaintiffs. North Carolina appeals from the judgment of the district court, as well as certain portions of the attorneys' fee awarded to plaintiffs. Farmers cross-appeals the denial of certain attorneys' fees and expenses. For reasons expressed more fully below, we affirm.

I.

Farmers is a nonprofit organization, incorporated and doing business in the State of North Carolina. Its purpose is to educate the public, officeholders, and candidates on issues relating to the agricultural and farming industries.[1] In furtherance of effectuating this purpose, Farmers provides the public with candidates' and/or officeholders' positions on issues affecting agriculture and farming. Farmers does not purport to nominate, elect, or defeat candidates. While Farmers does make expenditures that may incidentally influence the results of an election, it does not in explicit words or by express terms advocate

_____

[1] According to the allegations in the complaint, Perry is a person who has benefitted from, and would like to continue to benefit from, communications from Farmers. (J.A. 32, ¶ 32).

5

the election or defeat of a candidate. "In other words, [Farmers] does not engage in `express advocacy'--advocacy`that in express terms [calls for] the election or defeat of a clearly identified candidate for office.'" <u>North Carolina Right to Life,</u> 168 F.3d at 708 (quoting <u>Buckley v. Valeo</u>, 424 U.S. 1, 44 (1976) (per curiam)). Farmers does, however, engage in issue advocacy, in the form of dissemination to the public of information regarding the positions of candidates and/or officeholders. Farmers acknowledges that the issue advocacy in which it engages can and does influence the outcome of elections.

In particular, Farmers purchased advertising that was critical of certain members of the North Carolina House of Representatives, in particular, Rep. Cynthia Watson and Rep. Steven Rader. The advertisements named particular officials who were candidates for election, but did not expressly exhort voters to take a particular electoral action. Along with the advertisements, Farmers commissioned polling that included "push" questions (questions designed to convey a negative impression of the candidate).

After receiving complaints from Watson and Rader, the State Board of Elections conducted a hearing in April of 1998. The Board found that Farmers had acted with the intent to oppose the re-election of certain Republican candidates, and was therefore in violation of the reporting requirements contained in N.C. Gen. Stat. § 163-278.12A ("Section 12A").**2** The Board entered an order on June 23, 1998,

_____

**2** The statute provides, in pertinent part:

> Any individual, person, political committee, or other entity that makes an expenditure for printed material or advertisements broadcast or distributed to anyone other than members of the entity shall report those expenditures in accordance with subsection (b) of this section if the printed material or advertisement names a candidate or names an individual whose prospective or potential candidacy is the principal purpose of a political committee. The disclosure requirements of this section do not apply to the following:

> (1) Material that is solely informational and is not intended to advocate the election or defeat of a candidate or prospective candidate; or . . . .

N.C. Gen. Stat. § 163-278.12A.

requiring Farmers to register as a political committee and to make the filings required under Chapter 163 of the North Carolina General Statutes.

Farmers filed an action in federal court challenging as facially unconstitutional Section 12A and § 163-278.6(14) ("Section 14")[3] of the state election statute. Section 12A requires disclosure when an advertisement names a candidate, but does not apply if the material is solely informational and is not intended to advocate the election or defeat of a candidate. Section 14 defines a "political committee," which in turn triggers a series of potential penalties. Farmers claims that both sections of the statute are overbroad and therefore unconstitutional. Farmers sought both a temporary restraining order ("TRO") and a preliminary injunction against enforcement of the laws, and both were denied by the district court. Farmers filed an interlocutory appeal of the denial of the preliminary injunction.

Both parties filed motions for summary judgment in December of 1998. Shortly thereafter, this court issued its opinion in <u>North Carolina Right to Life, Inc. v. Bartlett</u>, 168 F.3d 705 (4th Cir. 1999). In that opinion, this court struck down Section 14 of the state election law, finding that the definition of political committee was unconstitutionally vague and overbroad.

Based on the <u>NCRL</u> decision, the district court found that the question of the constitutionality of Section 12A was moot. Notwithstanding the mootness determination, the court permanently enjoined the State from enforcing Section 12A against Farmers. The district court denied the State's motion to reconsider the question of mootness, and went on to award attorneys' fees and expenses to Farmers in July of 1999.

The State appeals the finding that the constitutionality of Section 12A is moot, and it also appeals that portion of the attorneys' fee
_____

[3] Section 14 defines political committee as "a combination of two or more individuals, or any person, committee, association, or organization, the primary or incidental purpose of which is to support or oppose any candidate or political party or to influence or attempt to influence the result of an election . . . ." N.C. Gen. Stat. § 163-278.6(14).

award attributable to work done on the unsuccessful interlocutory appeal. Farmers cross-appeals the denial of certain fees and expenses that they requested.

II.

The district court erred in ruling that the constitutionality of Section 12A was mooted by the NCRL decision. As both the State and Farmers pointed out, Section 12A could still be applied to Farmers notwithstanding this court's decision enjoining the State Board from applying Section 14. By its own terms, Section 12A applies to "[a]ny individual, person, political committee, or other entity . . . ." Farmers meets the requirements for inclusion not only as an "entity," but also as a "person." Therefore, the district court's failure to reach the question of the constitutionality of Section 12A on mootness grounds was erroneous. However, because the question is purely a legal one, a remand is unnecessary and this court will reach the constitutional question.

III.

"Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order `to assure (the) unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" Buckley v. Valeo, 424 U.S. 1, 14 (1976) (quoting Roth v. United States, 354 U.S. 476, 484 (1957)). In an effort to alleviate uncertainty, the Supreme Court adopted a bright-line rule to determine when political expression may be regulated. This bright-line rule requires the use of express or explicit words of advocacy of the election or defeat of a candidate before the communication may be regulated. See Buckley at 42.

The Buckley Court noted that "the distinction between discussion of issues and candidates and advocacy of issues and candidates may often dissolve in practical application." Id. at 42. The Court therefore refused to adopt a standard allowing regulation of any advertisement that mentions a candidate's stand on an issue. See id. at 42-43. In a footnote, the Court provided an illustrative list of the terms that qual-

8

ify as "express words of advocacy": "`vote for,' `elect,' `support,' `cast you ballot for,' `Smith for Congress,'`vote against,' `defeat,' `reject,'" Id. at 44.

The Fourth Circuit has steadfastly adhered to the bright-line "express advocacy" test from Buckley. In Federal Election Comm'n v. Christian Action Network, Inc., 110 F.3d 1049 (4th Cir. 1997), the court upheld an award of attorneys' fees to the Christian Action Network ("CAN") in a case where the FEC challenged a CAN ad identifying then-Governor Clinton's position on gay rights in a negative fashion, but did not use words of "express advocacy." The court, interpreting Buckley, stated that "[t]he Court opted for the clear, categorical limitation, that only expenditures for communications using explicit words of candidate advocacy are prohibited . . . ." Id. at 1051. The court therefore rejected the FEC's position that "express advocacy" could be established by looking at a group's use of imagery, rhetoric, and symbols in criticizing a candidate's position. See id. at 1064.

Other courts applying Buckley have also required express words of advocacy before allowing government regulation of campaign speech. See, e.g., Iowa Right to Life Committee, Inc. v. Williams, 187 F.3d 963, 969 (8th Cir. 1999) ("Questions of intent and effect, however, are to be excluded from the [express advocacy] analysis, since a speaker, in such circumstances, could not safely assume how anything he might say would be understood by others."); Faucher v. Federal Election Comm'n, 928 F.2d 468, 472 (1st Cir. 1991) ("In our view, trying to discern when issue advocacy in a voter guide crosses the threshold and becomes express advocacy invites just the sort of constitutional questions the Court sought to avoid in adopting the bright-line express advocacy test in Buckley."); Federal Election Comm'n v. Christian Coalition, 52 F. Supp. 2d 45, 61 (D.D.C. 1999) (holding that under the "express advocacy" test, the communication "must in effect contain an explicit directive," whose effect "is determined first and foremost by the words used"). It is therefore clear that courts have only allowed regulation of campaign speech when there are words of express advocacy in the communication itself.

On its face, Section 12A does not allow regulation of issue advocacy so long as it "is not intended to advocate the election or defeat

9

of a candidate or prospective candidate." However, if the intention of the communication is the election or defeat of a candidate, the statute would require financial disclosure. The State readily admits that Farmers' communications in and of themselves are not "express advocacy" of the kind described in <u>Buckley</u>. The State, however, argues that if an entity admits that the purpose of the advertisement is to defeat a particular candidate, regulation of that entity is constitutional under <u>Buckley</u> even if the advertisement itself does not contain words of express advocacy. The State does not cite any authority in support of its theory. In essence, the State is asking this court to recognize an exception to the "express advocacy" test when the entity admits, outside of the advertisement, that it is trying to defeat a particular candidate.

The State's position is undermined by <u>Buckley</u> and its progeny. The Supreme Court developed the express advocacy test to focus a court's inquiry on the language used in the communications; any other test would leave the speaker "wholly at the mercy of the varied understanding of his hearers and consequently of whatever inference may be drawn as to his intent and meaning." <u>Buckley</u>, 424 U.S. at 43. In addition, circuit decisions applying Buckley have categorically rejected any attempt to dilute the bright-line express advocacy standard.

Furthermore, under the State's proposed test, it is unclear which statements of intent made outside the context of an advertisement would leave the entity subject to regulation under North Carolina law. For example, a court would have to decide whether a statement made by the head of an organization that its ad "was intended to defeat candidate X" was enough to impute intent to the organization; in addition, some members of an organization may admit that an ad "was intended to defeat candidate X" while others in the organization may claim that the intent of the ad was to focus on a particular issue.

Discerning the "intent" of an organization thus can be problematic, even if some in the organization "admit" their intent in running the ad. Certain groups might be disinclined to engage in political speech, fearful that someone in the group would make a public statement of the group's intent in a particular ad, thus subjecting the group to regulation. We therefore would create a legal standard that would be the

10

antithesis of the bright-line express advocacy test developed in <u>Buckley</u>. Consequently, we decline the State's offer to abandon the rule of <u>Buckley</u> and to allow the State of North Carolina to regulate political expression, which on its face is issue advocacy, when the speaker acknowledges an intent to influence the outcome of an election. Because Section 12A would allow the regulation of issue advocacy wherein the speaker has manifested an intent to advocate the election or defeat of a candidate, it is unconstitutionally overbroad and the State is permanently enjoined from enforcing it.

IV.

The State next argues that the district court abused its discretion in awarding attorneys' fees of $24,418.07 to Farmers for time spent on its interlocutory appeal of the denial of a motion for a preliminary injunction and its attempt to obtain an injunction at the appellate level. The State submits that Farmers' efforts at obtaining interlocutory relief did not in any manner advance the course of the litigation or contribute to the relief obtained by the final judgment.

Farmers filed the instant lawsuit challenging the constitutionality of both Sections 12A and 14, and seeking injunctive relief to prohibit their enforcement. The district court denied the motion for a preliminary injunction on the grounds that the harms were nearly equal and that Farmers had not demonstrated a likelihood of success on the merits.

Farmers appealed from the denial of its motion for a preliminary injunction and asked this court for an injunction pending appeal. This court denied the motion for an injunction pending appeal. Farmers then asked the district court to stay proceedings in that court pending the outcome of the interlocutory appeal. Farmers asked for the stay because some of the legal issues on appeal from the denial of the preliminary injunction were also present in <u>NCRL</u>, which was pending in the Fourth Circuit, and that the interests of judicial economy would be served by awaiting this court's decision rather than going back to the district court.

The State argues that the district court should not have awarded attorneys' fees to Farmers for work done pursuing its interlocutory

11

appeal because the appeal was fruitless. Specifically, the State notes that, in NCRL, the Fourth Circuit stayed, pending appeal, the district court's order finding Section 14 unconstitutional. The State argues that, given this ruling by the Fourth Circuit, Farmers' attempt to appeal the denial of a preliminary injunction in this case was doomed to fail. According to the State, the Fourth Circuit was not about to allow continued enforcement of Section 12A pending appeal in NCRL yet enjoin the enforcement of the same statute in this case.

In response, Farmers notes a number of reasons why it was reasonable to pursue its appeal of the denial of the preliminary injunction despite this court's ruling in NCRL. First, Farmers notes that a determination to stay a judgment pending appeal in one case depends on the unique circumstances in that case and has no bearing on other cases in which the parties and circumstances are different. A stay pending appeal thus "contemplate[s] individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." Hilton v. Braunskill, 481 U.S. 770, 777 (1987). The stay in NCRL therefore did not mean that this court would not overturn the denial of the preliminary injunction in this case.

Second, Farmers notes that in NCRL, the State's lead argument for a stay pending appeal was that the plaintiffs in that case lacked Article III standing. In the instant case, standing has never been a serious issue. Farmers thus could have reasonably believed that the court was considering the merits of a stay of the statute for the first time when Farmers pursued its appeal of the denial of the preliminary injunction.

Finally, Farmers argues that its appeal was reasonable because this case involves different statutes than those involved in NCRL. Both cases involved a challenge to Section 14; however, NCRL also involved a challenge to § 163-278.13B, a regulation on lobbyist contributions, which was not at issue in this case. Further, Farmers challenged Section 12A, the statute at issue in this appeal, while that statute was not challenged in NCRL. Because the statutes involved in the cases were not identical, Farmers argues it had a reasonable basis for pursuing its appeal of the denial of the preliminary injunction.

The district court did not abuse its discretion in awarding Farmers attorneys' fees for its work on the interlocutory appeal. As the State

12

concedes, Farmers was a prevailing party in this litigation. Although it did not prevail on its interlocutory appeal, it was ultimately successful in having the State enjoined from applying both Section 12A and Section 14. The State's efforts to characterize Farmers' efforts as "wholly futile" based upon the stay entered in NCRL is unavailing. The State seems to suggest that this court's stay Order in NCRL essentially made it impossible for Farmers to prevail on its interlocutory appeal. The court agrees with Farmers' assessment of the deficiencies of the State's argument to this effect and agrees that pursuit of the interlocutory appeal was not a futile endeavor.

Furthermore, the court finds unconvincing the State's argument that because Farmers did not prevail in its interlocutory appeal, it was not entitled to its fees for pursuing it. As the Fourth Circuit has noted, "entitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim or, as here, a separate proceeding is so unrelated as to justify treating it as a `separate lawsuit[].'" Plyler v. Evatt, 902 F.2d 273, 280 (4th Cir. 1990) (" Plyler II"). The district court found that Farmers' pursuit of interlocutory relief was related to the case in chief, and that, therefore, Farmers was entitled to its attorneys' fees for this work. Its decision in this regard was not an abuse of discretion.

V.

Finally, Farmers argues that the district court erred in denying certain attorneys' fees requested in responding to the State's motion for reconsideration on the question of mootness. Defendants argue that the district court's denial of the fees was proper. The parties disagree as to the standard of review applicable to this challenge.

"If the district court denies a prevailing party's motion for attorneys' fees, we review such denial for abuse of discretion. However, if the district court determines, as a matter of law, that a party is not a prevailing party, we review the district court's determination de novo." Reinbold v. Evers, 187 F.3d 348, 362 (4th Cir. 1999) (citations omitted); see also Shaw v. Hunt, 154 F.3d 161, 164 (4th Cir. 1998); McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998).

13

In arguing that the district court ruled as a matter of law that they were not entitled to prevailing party status, plaintiffs apparently hang their hat on certain language found in the district court's order of July 27, 1999, which reads:

> Plaintiffs have submitted a request for fees and expenses for 40.75 hours of work done in relation to a motion to reconsider and in response to defendants [sic] objections to their original fee declaration. Defendants object to an award of fees and expenses for this time on the ground that the motion to reconsider to which plaintiffs responded was not addressed to the issue on which they prevailed. Specifically, defendants moved this court to reconsider its Order of 8 March 1999 only as to its decision that the unconstitutionality of N.C. Gen. Stat. § 163-278.12 was moot. Defendants did not move for reconsideration on the merits of the initial ruling. Plaintiffs agreed with defendants that the issue was not moot. However, they did not limit their response to the parameters of the motion, instead taking the opportunity to rebrief the merits as to that statute. The court denied the motion to reconsider by Order filed 9 June 1999 and did not reach the merits as both sides requested. <u>Thus, neither side prevailed and each should bear its own costs.</u>

J.A. 313 (emphasis added). Plaintiffs' reliance on this language to support their position that the district court had found that it was not a prevailing party, and thus, requiring <u>de novo</u> review on appeal, ignores the indisputable finding of the court that plaintiffs were in fact prevailing parties. <u>See, e.g.</u>, J.A. 307 ("[T]he plaintiffs, as the prevailing party, are entitled to `a reasonable attorney's fee as part of costs' at the discretion of the court."). It is obvious that the district court did not, as a matter of law, determine that plaintiffs were not a prevailing party. Therefore, we will review the district court's decision for an abuse of discretion.

As the parties are aware, a prevailing party is not necessarily entitled to all attorneys' fees requested, but rather, only those which the district court finds to be "reasonable." <u>See</u> 42 U.S.C. § 1988; <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 429 (1983). "Counsel for the prevailing party should make a good faith effort to exclude from a fee request

14

hours that are excessive, redundant, or otherwise unnecessary. . . ." Id. at 434. A district court has discretion in determining the amount of a fee award. See id. at 437.

The district court did not abuse its discretion in determining that Farmers was not entitled to attorneys' fees for their response to the motion to reconsider. The State limited the scope of its motion to reconsider to the issue of the district court's determination that the constitutionality of Section 12A was moot.**4** There is no dispute that plaintiffs agreed with defendants on this point. However, in responding to the motion, plaintiffs spent little time in arguing on the question of mootness, but rather seized the opportunity to reargue the merits of the constitutionality of Section 12A, an issue that had already been extensively briefed for the court. When the district court denied the motion for reconsideration, it pointed out that the parties were in agreement on the issue of mootness. Therefore, because the motion was denied, the court determined that neither side had prevailed on this issue. It is obvious that the district court considered the hours expended on the response to the motion for reconsideration to be unnecessary. The district court noted that Farmers spent little, if any, time briefing the issue of mootness, which was the subject of the motion for reconsideration. The district court, in its discretion, decided that the state should not bear the expenses associated with plaintiffs' opportunistic briefing of issues not addressed by the motion to reconsider. Farmers argues that this court's holdings in Plyler II and Arvinger v. Mayor & City Council of Baltimore, 31 F.3d 196 (4th Cir. 1994), illustrate the error of the district court's holding. However, Plyler II and Arvinger are inapposite. Plyler II and Arvinger were concerned with whether a litigant's status as a prevailing party carries over to subsequent litigation efforts. As discussed above, there is no question that Farmers' status as the prevailing party carried over to the motion for reconsideration. The issue in the instant case is not whether Farmers was entitled to prevailing party status, but rather, as

_____

**4** Although Farmers argues that the State reargued the constitutionality of Section 12A in its motion to reconsider, the State simply referred the court to its earlier briefs on this issue. Farmers contends that this action required a response on the issue of the constitutionality of the statute. However, Farmers could simply have followed the state's lead and referred the district court to its earlier briefing on the subject.

15

the prevailing party whether it was entitled to its fees in pursuing the motion to reconsider. The district court, in its discretion, found that they were not and this court finds no error in its ruling.

VI.

In conclusion, we hold that the constitutionality of Section 12A was not mooted by our holding in NCRL and the district court erred in so finding. We find the statute to be unconstitutionally overbroad and the state is enjoined from its enforcement. We affirm the district court's rulings on the attorneys' fees issues that are the subject of the appeal and the cross-appeal.

AFFIRMED

16